WILLIAM BELLINGTON, JOHN J. CLARK AND ELIZABETH CLARK, PARTNERS TRADING AS EAST WINDSOR TRAILER PARK, AND JOHN BROWN, PLAINTIFFS-APPELLANTS, v. TOWNSHIP OF EAST WINDSOR, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Argued January 31, 1955—Decided March 14, 1955.

560

Mr. *Milford Salny* argued the cause for appellants.

Mr. *Henry F. Satterthwaite* argued the cause for respondent (*Messrs. Satterthwaite & Satterthwaite,* attorneys).

The opinion of the court was delivered by

HEHER, J.   We are concerned here with the legal sufficiency of a local ordinance to "license and regulate" trailer camps and camp sites within the municipality, adopted May 6, 1953.

The ordinance is essentially regulatory directed to the problems peculiar to trailer camps and camp sites.   It embodies measures related to the provision of potable water and adequate sanitary facilities, overcrowding, the disposal of garbage, ashes and waste matter, the maintenance and use of cesspools, septic tanks and plumbing fixtures, the lighting of the camp grounds and toilet facilities, drainage, grading, the observance of health practices and the requirements of law and good order.   It prescribes a "license fee" of $200 per annum for a "trailer camp or camp site" and $2 "per calendar week per trailer," reduced to $1 for "any trailer parked in a camp three days or less," which "said fee is hereby expressly declared to be imposed for revenue"; and this "license fee" is denounced "as enacted for purposes of

taxation, not regulation," and "prohibitory and confiscatory," yet severable from the "regulatory and administrative" provisions of the ordinance which stand unchallenged.

The contention of *pro tanto* invalidity was overruled by the Law Division of the Superior Court, and the Appellate Division affirmed the judgment. *32 N. J. Super.* 243 (1954). The case is here under *Article VI, section V, paragraph* 1(*a*) of the 1947 *Constitution*, providing for an appeal of right in cases involving a substantial and not merely colorable constitutional question. See *State v. Pometti*, 12 *N. J.* 446 (1953).

The argument is that the "municipal purpose, in adopting the license fee provisions, was to impose a tax," and a license fee "imposed as a tax is equally bad, standing alone or accompanied by separable regulatory provisions." And this "notwithstanding the language" of *R. S.* 40:52–2, on the authority of *Salomon v. Jersey City*, 12 *N. J.* 379 (1953). But the *Salomon* case does not go so far.

█ It cannot be gainsaid that a business, occupation or activity having a potential for harm to the public weal in matters of health, safety, morals, or property is the subject of reasonable regulation to obviate or eradicate the inimical influence; and tourist or trailer camps are by their very nature in this category. This is but the exercise of the police power to a legitimate public end.

In New Jersey such regulation is a municipal function by legislative grant. Under *R. S.* 40:52–1(*d*), as amended by *L.* 1948, *c.* 425, the local governing body "may make, amend, repeal and enforce ordinances to license and regulate: (d) * * * trailer camps and camp sites, * * *." And the next succeeding section, *R. S.* 40:52–2, empowers these local agencies of government to "fix the fees for all such licenses, which may be imposed for revenue, * * *."

In *Edwards v. Mayor & Council of the Borough of Moonachie*, 3 *N. J.* 17 (1949), we sustained, as within this statutory power, a local ordinance which combined both police and tax measures. And in *Independent Warehouses, Inc., v. Scheele*, 134 *N. J. L.* 133 (*E. & A.* 1946), affirmed

331 *U. S.* 70, 67 *S. Ct.* 1062, 91 *L. Ed.* 1346 (1947), the sale of coal storage service was the business regulated and taxed by local ordinance under the same grant of power. The statute, *R. S.* 40:52–1(*g*)–2, was there held to concern "a license or privilege tax or excise levied for both revenue and regulation under the police power * * *." The statutorily-provided "license" was defined as "a means of regulating and taxing privileges and occupations and the use and disposal of property," a power contained within reasonable bounds and subject in its exercise to the basic principle interdicting "confiscation and oppression under the guise of taxation."

*Salomon v. Jersey City* is differentiable. There, the question decided was whether the selfsame statute delegated to municipalities legislative jurisdiction to "impose solely for revenue purposes, license taxes upon all businesses operating within their borders, including manufacturers, wholesalers and retailers," a power distinct in attribute and incidence. The local action reviewed was an ordinance "establishing licensing requirements for businesses having a *situs* in the City." It was devoid of regulatory features; indeed, it did not purport to be regulative, but was concededly a taxing measure designed to raise annual revenues of $3,000,000. Wholesalers and retailers were made subject to license fees measured by gross receipts; manufacturers, by their payrolls; truckers, by the square footage of space occupied by their truck terminal. There were other classifications. But we need not go on. It suffices to say that this was a general revenue measure, in no sense involving regulation for police purposes or otherwise; there was no pretense of regulation. Justice Jacobs said, and this is the rationale and interpretive principle of the decision: "It is purely a taxing measure without any regulatory aspects whatever and is made applicable to all businesses, including those clearly having intermunicipal and interstate aspects such as manufacturers, and with varying tax bases including gross receipts, payrolls and square footage," and so not within the enabling act cited *supra*. In the light of the history and long-continued usage,

the nature of the subject matter, and the acts *in pari materia*, it was deemed that the "primary and overriding" legislative purpose was "to authorize municipalities to license and regulate as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs."

■ In a word, the enabling statute is not a general municipal tax measure, as an end in itself, but is in essence a regulative police mechanism directed to the service of the public need in the particular area of governmental action by control through license and a license fee which may also, within reasonable bounds, be imposed for revenue as an incident of the police regulation, and by the same token a fee reasonably related to the regulated subjects and the public ends to be served.

■ There is a basic distinction between a local legislative act primarily regulative of a business, trade, profession, or calling in the exercise of the police power to serve the common need and the use of the delegated power to tax the pursuit for revenue. In the first case the license fee is ordinarily the means of defraying the expense fairly attributable to the regulative process, while the broader sovereign power to tax for revenue to serve a public purpose of a general nature is confined by constitutional limitations, the terms of the grant itself, and the rule of reason and good discretion. *Independent Warehouses, Inc., v. Scheele, supra; Jersey City v. Martin*, 126 *N. J. L.* 353 (*E. & A.* 1941); *Eastern Pennsylvania Power Co. v. State Board of Taxes*, 103 *N. J. L.* 281 (*Sup. Ct.* 1927); *Muhlenbrinck v. Long Branch Commissioners*, 42 *N. J. L.* 364 (*Sup. Ct.* 1880). See also *Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Co.*, 347 *Pa.* 555, 32 *A. 2d* 914 (*Sup. Ct.* 1943).

■ The assessment of the cost of a license and the ensuing governmental supervision and control is sustained by the correlative benefits to the public. *Alabama Power Co. v. Federal Power Commission*, 75 *U. S. App. D. C.*

315, 128 *F. 2d* 280 (1942), *certiorari* denied 317 *U. S.* 652, 63 *S. Ct.* 48, 87 *L. Ed.* 525 (1942). A license tax for revenue represents an exercise of the general taxing power. Thus, one is differentiated from the other, although the license fee for regulation alone also has the connotation of a tax as a charge on the business or pursuit for the cost of supervision in the public interest. See *Spencer v. Maryland Jockey Club of Baltimore City,* 176 *Md.* 82, 4 *A. 2d* 124, 479 (*Ct. App.* 1939); *Lamere v. City of Chicago,* 391 *Ill.* 552, 63 *N. E. 2d* 863 (*Sup. Ct.* 1945); *In re Opinion of Justices,* 250 *Mass.* 591, 148 *N. E.* 889 (*Sup. Jud. Ct.* 1925); *Maryland Theatrical Corp. v. Brennan,* 180 *Md.* 377, 24 *A. 2d* 911 (*Ct. App.* 1942); *City of Buffalo v. Lenn,* 192 *N. Y.* 193, 84 *N. E.* 809 (*Ct. App.* 1908); *Conard v. State,* 2 *Terry* 107, 41 *Del.* 107, 16 *A. 2d* 121 (*Sup. Ct.* 1940). The powers are essentially different: one is to license and regulate under the police power; the other, to raise revenue under the general power to tax. But the two may be "unitedly exercised." *Becker v. Pickersgill,* 105 *N. J. L.* 51 (*Sup. Ct.* 1928). See *City of Chicago v. R. & X. Restaurant,* 369 *Ill.* 65, 15 *N. E. 2d* 725, 117 *A. L. R.* 1313 (*Sup. Ct.* 1938). And the assessment may still constitute a license fee proper rather than a tax for revenue even though the fee charged be in excess of the regulatory expenses and burdens. Where the primary object is police regulation, it does not necessarily matter that the incidental result is revenue above the actual cost of supervision and control of the business; that is not enough to render the return a tax for revenue rather than a license tax; *e contra,* where revenue is the principal objective of the tax, it is not sustainable under the police power alone. *Maryland Theatrical Corporation v. Brennan,* cited *supra; Perry v. Hogarth,* 261 *Mich.* 526, 246 *N. W.* 214 (*Sup. Ct.* 1933); *People ex rel. Einsfeld v. Murray,* 149 *N. Y.* 367, 44 *N. E.* 146 (*Ct. App.* 1896). See 53 *C. J. S., Licenses,* § 3, *p.* 454.

The principle finds expression in *Board of Com'rs of City of Newark v. Local Government Board,* 133 *N. J. L.* 513 (*Sup. Ct.* 1945), involving moneys derived from parking

meters in the exercise of the police power to control the use of the public streets. The holding there was that, while meters may be employed to defray the expense of the general regulatory service, a municipality may not, under the guise of regulation, absent specific legislative authority so to do, lay a license or privilege tax upon the use of the streets, for such course would not form a proper exercise of the police power. But the money-yield of the meters was held applicable to the defrayment of the cost of performing the general function of regulating and controlling traffic without rendering the measure one for revenue in the seeming exercise of the police power; and the meter rates were found supportable in this larger aspect of traffic regulation and control as essential to the public good and welfare. And see the more recent case of *Weiner v. Borough of Stratford, County of Camden,* 15 *N. J.* 295 (1954).

"It has been recognized consistently by judicial authority that, where it is necessary in the proper conduct of business that unusual demands be made on the city facilities, a reasonable charge may be made by the municipality to cover its actual expense in providing such special services. * * * In the broad sense every ordinance which requires the payment of money is a revenue producing measure, but the *primary purpose of ordinances* such as this under consideration is *the reimbursement of the city* for providing special services to the licensees. * * * Though we may suppose the ordinance was imposed to increase the revenue, this does not invalidate it as a licensing ordinance if it clearly appears the city is seeking to compel the persons who cause expense to pay for it." *American Baseball Club of Philadelphia v. City of Philadelphia,* 312 *Pa.* 311, 167 *A.* 891 (*Sup. Ct.* 1933), appeal dismissed 290 *U. S.* 595, 54 *S. Ct.* 128, 78 *L. Ed.* 524 (1933).

See also *William Laubach & Sons v. City of Easton,* 347 *Pa.* 542, 32 *A.* 2d 881 (*Sup. Ct.* 1943).

Here, we have a fundamentally regulative ordinance in the undoubted exercise of the police power to an essential public end, levying also a tax for revenue as an incident of the regulation, and so a tax, complementing the license fee proper, that is legally sufficient if it be reasonably related to the value of the public services and facilities afforded the users of the regulated areas and the benefits of the regula-

tions themselves and the consequent governmental supervision and control; and thus a correlated exercise of both the police and the taxing powers conformably to the statutory grant.

The *quantum* of the fee of necessity depends upon the nature and circumstances of the regulated category. The tax concept may be expressed in terms of the duty of the sharers of the benefits of government to bear its burdens equitably and justly. Trailer camps are peopled in great part by transients who use and enjoy the community's services and facilities without sharing the cost; and the inclusion in the license fee of a tax designed in some measure to equalize the common burden is within the statutory tax for revenue as an incident of the police regulatory power. In *Edwards v. Borough of Moonachie, supra,* we cited, for example, a substantial increase in the school enrollment and the special health and sanitation problems attending the operation of the trailer court. And such is also the case here.

But the tax may not be prohibitory or confiscatory; and it is urged that the "charge is so high as to have the effect of prohibiting persons from conducting a legitimate business," and so "prohibitory," citing *Gurland v. Town of Kearny,* 128 *N. J. L.* 22 (*Sup. Ct.* 1942), and converting a "legitimate business profit into a substantial deficit," and thus "confiscatory," as in *Hoffman v. Borough of Neptune City,* 137 *N. J. L.* 485 (*Sup. Ct.* 1948).

It is said that during the calendar year 1953 the gross revenue from the business in question was $6,215.66, and the operating expenses aggregated $4,794.01, not inclusive of the value of plaintiffs' "work in carrying on the business" or a return on their investment of $15,402.07; and thus the payment of the annual license fee for that year of $3,112, being 50% of the gross income, would "change a profit of $1,421.64 to a loss of $1,680.35," and the conclusion is inescapable that here the power to license "is being exercised not to regulate" the business in question, "but to destroy it." Yet at a tourist camp serving the area on the same highway seven miles away, in the adjacent Township of Washington,

under the same annual charge, the monthly rate per trailer is $26.50 ($20 for the camp service, plus a municipal license fee of $6.50, at the weekly rate of $1.50 per trailer), as compared with plaintiffs' monthly charge of $18 plus the license fee of $8.67, or a total of $26.67. And the service charges made by plaintiffs' two competitors in East Windsor Township are $20 and $21 per trailer. Moreover, plaintiffs' camp and the court in Washington Township are operated in conjunction with the sale of trailers; and the operator of the latter testified that, while he made "a very small amount," $1,000, from the operation of the "trailer park" in 1953, his "trailer sales business would be adversely affected" were it not for "this trailer park." Thus it is fairly inferable that the trailer rentals here are in aid of sales promotion in the pursuit of the allied business, without full regard to the value of the service.

There is no ground for the insistence that the rental charges "were calculated to produce maximum gross revenues" and the "traffic would not bear any larger charge." Distant tourist camps are of little help by way of comparison. Plaintiffs concede that their rate is "lower by $2 or $3 per month respectively than" those obtaining in the two competing camps in East Windsor Township; and so no supporting inference is deducible from the different ratio of occupancy. And the Washington Township camp is obviously not to be rejected as affording an illusory basis for comparison because it provides 75 trailer spaces as against 31 in plaintiffs' court, and the investment is $60,000 as against $15,000. Difference in number has no necessary relation to the unit price. We are in accord with Judge Goldmann's assessment of the proofs and his finding that, considering the reduced value of the dollar in terms of purchasing power and the mounting cost of local government in the interim, the fee per trailer here compares favorably with the charge made in the *Moonachie* case.

There is no showing that the burden of the tax is such that profitable operation cannot be had under a fair and reasonable rate for the service thus provided. There is a

presumption of reasonableness that stands until overcome by proof; and the burden in this regard falls upon him who asserts the contrary.

"The inquiry is whether the exaction bears a reasonable relation to the value of the privilege conferred. The operator of the business made subject to the excise cannot subvert or defeat the State's delegated power to tax by undervaluing the service." *Edwards v. Borough of Moonachie, supra.*

See also *Independent Warehouses, Inc., v. Scheele, supra; Ring v. Mayor and Council of Borough of North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24, appeal dismissed 335 *U. S.* 889, 69 *S. Ct.* 250, 93 *L. Ed.* 427.

The ordinance is *intra vires.*

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.