GEORGE GILBERT AND SENTINEL SALES CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. TOWN OF IRVINGTON, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 3, 1956—Decided January 23, 1956.

*Mr. Ira D. Dorian* argued the cause for appellants (*Mr. Howard A. Goldberger*, attorney).

*Mr. John J. Gaffey* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J.    This is an action in lieu of prerogative writ contesting the validity of an ordinance of the Town of Irvington which establishes a license fee of $100 per year for each coin-operated milk vending machine operated within the town limits.

The judgment below directed the entry of judgment in favor of the defendant, and we granted certification prior to argument in the Appellate Division.

The plaintiffs are engaged in the retail sale and distribution of milk to the public through coin-operated milk vending machines, and during August and September 1954 they applied for and were issued licenses by the Irvington Department of Health permitting them to sell and dispense milk from machines.

The fee charged at that time for the licenses was $2.50 per machine, pursuant to an ordinance applicable to all stores or vehicles selling milk and milk products.

In March 1955 Irvington enacted an ordinance specifically regulating the distribution of milk through coin-operated vending machines. The ordinance provides that before a machine may be installed, application must be made to the License Bureau of the Town of Irvington, whereupon approval must be given by the Health Department, the Chief of Police, the Fire Department and the Building Superintendent.

Section 6 of the ordinance imposes a license fee of $100 for each machine applied for. This is the section under attack in these proceedings.

Prior to the adoption of the 1955 ordinance, the plaintiffs had invested substantial sums in the purchase and installation of milk vending machines under the licenses which had been issued to them the year before. They also entered into rental agreements with the property owners where the machines were located.

The economic impact of the ordinance upon the vending machines in question results in a levy of almost 25% of the profits derived from the machines, and little else need encumber the record as to the character and details of the other financial equations and transactions except to say that in some respects the record is far from complete.

The record shows each application for a license for a milk vending machine was processed by the Fire Department, the Police Department and the Health Department and that the

work of the various departments consumed about three days per year for each machine.

Although this was testified to, admittedly no extra policemen were added to the payroll as a result of the presence or operation of the machines. The Police Department made regular inspections of the contrivances as part of its patrol duty, while the Fire Department only made an inspection of the machines when they were first installed to ascertain whether they constituted a fire hazard.

The Sanitation Department inspected the machines once a week and purchased a quart of milk from each to ascertain its quality and to determine other facts in reference to the sale of the product.

It appears there were over 200 stores selling milk in the Town of Irvington and the town did not hire any additional help as a result of the installation of the milk vending machines.

Although the license fee for these machines was fixed at $100 per machine, the fee for the privilege of selling milk from a store or vehicle remained at the original $2.50.

The plaintiffs contend the license fee unreasonably exceeds the necessary or probable expense of issuing the license and of inspecting and regulating coin-operated milk vending machines and is exorbitant, oppressive and confiscatory. It is also insisted the ordinance imposes an arbitrary and discriminatory classification in placing upon coin-operated milk vending machines a fee greatly in excess of that laid upon others in comparable circumstances and is in reality designed primarily to bar the use of the coin-operated milk vending machines in competition with local merchants.

We, of course, start with the basic proposition that the license fee required by the duly enacted ordinance of the Town of Irvington is entitled to a presumption of reasonableness and the burden of proving otherwise rests with the plaintiffs. *Bellington v. East Windsor Twp.*, 17 *N. J.* 558, 568–9 (1955).

The power of a municipality to regulate or license emanates from *R. S.* 40:52–1 and 40:52–2, and the right

of a municipality so to do and to exact fees for revenue is dependent upon and limited by the power so conferred.

A municipal corporation is a government of enumerated powers acting by a delegated authority, and it has no inherent jurisdiction to make laws or adopt regulations of government. *N. J. Good Humor, Inc., v. Board of Com'rs of Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940); *City Affairs Committee v. Board of Com'rs of Jersey City,* 134 *N. J. L.* 180 (*E. & A.* 1946); *Edwards v. Mayor, etc., of Borough of Moonachie,* 3 *N. J.* 17 (1949).

In *Salomon v. Jersey City,* 12 *N. J.* 379 (1953), an ordinance imposed solely for revenue on all businesses operating within the city was nullified, the court concluding, through Justice Jacobs (at *page* 390):

"In the light of all of the foregoing we consider that the primary and overriding purpose of the Legislature in enacting *R. S.* 40:52–1 and *R. S.* 40:52–2 was to authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs."

The court thus restricted the amount which could be exacted by a municipality by way of license to a sum at least indirectly related to the cost of the regulation. It could exceed the regulatory overhead but only within "reasonable limits." See also *North Hudson Cty. Ry. Co. v. Hoboken,* 41 *N. J. L.* 71 (*Sup. Ct.* 1879); *Clark v. New Brunswick,* 43 *N. J. L.* 175 (*Sup. Ct.* 1881).

The defendant seeks shelter in the interpretation of the *Salomon* case in *Bellington v. East Windsor Twp., supra.* That ruling distinguishes at some length the *Salomon* case but does not give the comfort sought by the defendant. Its ultimate determination does not alter the rule pronounced in the Salomon case, and although it mentions taxes levied both under the "police power" and "tax for revenue," it nevertheless holds the levy so made would be legally sufficient only "if it be reasonably related to the value of the public services and facilities afforded the users of the regu-

lated areas and the benefits of the regulations themselves and the consequent governmental supervision and control; and thus a correlated exercise of both the police and the taxing powers conformably to the statutory grant." 17 *N. J.*, at *pages* 566–7.

This additional reflection has no place in the case *sub judice* as the value of a public service or facility inuring to the licensee was not an issue. See *Weiner v. Borough of Stratford, County of Camden,* 15 *N. J.* 295 (1954).

■ In determining the appropriate fee, a municipality must consider not only the increased cost involved to the municipality but also the proportionate share left to the business after the tax. *Hoffman v. Neptune City,* 137 *N. J. L.* 485 (*Sup. Ct.* 1948); see *The Great A. & P. Tea Co., Inc., v. Camden,* 122 *N. J. L.* 47 (*Sup. Ct.* 1939). Nor may a municipality impose an arbitrary classification on the same classes of business for the purpose of either regulation or taxation. *Ring v. North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24 (1948), appeal dismissed 335 *U. S.* 889, 69 *S. Ct.* 250, 93 *L. Ed.* 427 (1948).

In determining whether or not the fee imposed is unreasonable, oppressive and confiscatory, "comparison with other license fees imposed" may be resorted to. *Gurland v. Kearny,* 128 *N. J. L.* 22 (*Sup. Ct.* 1942).

The record discloses that for a retail store selling milk the license fee is $2.50; a restaurant's fee is $20, a supermarket's $50. One has difficulty by these comparisons to find justification for a fee of $100 for the milk vending machines in question.

■ The total cost of their regulation, including sums spent to obtain containers from the machines in question, are all matters to be taken into consideration, but a municipality may not prohibit lawful business, trades or occupations, and these may not be subjected to suppression by way of regulation. The power to regulate does not embrace the power to prohibit in the guise of a confiscatory tax.

■ This obviously is not an instance in which the operator subject to the tax is attempting to subvert or defeat

438

the municipality's delegated power to tax by undervaluing the services provided. See *Edwards v. Mayor, etc., of Borough of Moonachie, supra*. Plaintiffs are in direct competition with other vendors of milk, and they must meet the competitive price per quart of milk and abide by the state-controlled price. Yet, the ordinance in question, which exacts a license fee as much as 40 times the fee imposed upon their competitors, manifestly jeopardizes, if not destroys, their ability to compete successfully with other milk vendors. In the absence of any evidence that the difference in treatment, taxwise, between plaintiffs and their competitors is justified by increased costs of regulation, the ordinance cannot stand.

We think the burden imposed upon the plaintiffs has been met, and we hold the ordinance in question, exacting a license fee of $100 for each milk vending machine, is unreasonable, discriminatory and confiscatory and the ordinance in this respect is declared to be illegal and void.

The judgment below is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—None.