54 N.J. Super. 363 (1959)
148 A.2d 868
KALMAN KONYA, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF READINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1959.
Decided March 6, 1959.
*364 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Milford Salny argued the cause for appellant.
Mr. Henry F. Schenk argued the cause for respondent.
*365 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a judgment of the Superior Court, Law Division, upholding the validity of the Readington Township ordinance regulating and licensing trailer coach parks.
Plaintiff has since 1951 owned and operated a trailer camp in Readington Township with accommodations for 20 trailers, including the one occupied by him and his family on a permanent basis. There is a building on the property used for toilet and laundry facilities. None of the trailers is installed on a permanent foundation and, except for plaintiff's, none is assessed for property taxation. There are presently ten children residing in the trailer camp, including plaintiff's two. One of the ten attends the township high school and the others the elementary school. Plaintiff's trailer camp is now the only one in the township.
On May 15, 1957 the township adopted a comprehensive ordinance "to provide for the licensing and regulation of trailer coach parks." In addition to imposing license fees, it contained regulations relating to trailer camp plans and facilities, water supply, sanitation facilities, laundry facilities, sewage and refuse disposal, fire protection, supervision and inspection, as well as a penalty provision. Plaintiff at once instituted an action in lieu of prerogative writs to review and set aside the ordinance as invalid or, in the alternative, to have certain sections, including the licensing section, declared void. Following the pretrial conference defendant amended its ordinance in an attempt to meet certain of plaintiff's objections. Thereafter, at the opening of the trial, plaintiff pointed out to the trial judge that certain provisions, by reason of the amendments, had become inconsistent and self-contradictory, or had been made so vague and uncertain in meaning as to render the whole ordinance or certain essential parts thereof nugatory. The township offered to correct these defects by amendment and, with plaintiff's approval, it was agreed that the court would, in deciding the case, pass upon and point out such defects as required correction, indicating how they should be corrected, *366 and defendant would then proceed to amend accordingly. The court did this at the close of its oral opinion, deferring entry of judgment until the township had had an opportunity to adopt the necessary amendatory ordinance. Such ordinance was adopted and the trial court then entered the judgment in favor of defendant here under appeal.
The only issue on appeal relates to the legal propriety and reasonableness of section 4 of the ordinance relating to license fees. That section announced that a license fee shall be imposed "for the purpose of raising revenue"  an annual trailer park license fee of $50, and a fee of $6 per trailer per month, or $1.50 per week or fraction thereof where trailer occupancy is less than one month, both payable by the operator to the township clerk. Plaintiff does not argue any invalidity or unreasonableness of the annual license fee, but asserts that the monthly fee imposed on each trailer site occupancy is invalid and should be set aside. The claim is that the fee far exceeds the regulatory cost; that it is prohibitory or confiscatory, bearing no reasonable relation to the value of the privilege conferred, citing Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 26 (1949); that it cannot be sustained on the basis of what our Supreme Court said in Salomon v. Jersey City, 12 N.J. 379 (1953), nor under the test announced by that court in Bellington v. East Windsor Township, 17 N.J. 558 (1955). Plaintiff characterizes the monthly license fee as a special tax, having no lawful or reasonable justification under N.J.S. 40:52-1 and 2.
The frank testimony of the municipal officials was that the monthly fee was a means of indirectly collecting from each trailer tenant what the township committee felt was his fair share of the cost of municipal services furnished or available to him, to the same extent as persons residing in conventional homes. Although the township has no water or sewage system, or paid police department, it supplies elementary and high schools (with transportation thereto), roads, health services through a paid health inspector and another inspector paid on a per call basis, and fire protection *367 through volunteer companies aided by the governing body. There was evidence that the average homeowner pays a tax of $200 to $250 per year; the comparable charge under the monthly license fee would be $72.
The trial judge concluded in an oral opinion that plaintiff's objection to the monthly license fee as being in reality a special tax, illegal because beyond municipal power and authority, was not valid  and this on the authority of the Bellington case. He also held that plaintiff had not sustained the burden of proof which was his in establishing that the amount of the monthly fee was unreasonably high and confiscatory; that "[W]hile there is no substantial evidence to show that it bears any real relation to the cost of administration of the regulatory features of the ordinance, that does not appear to be the test or even a test, with respect to a trailer camp ordinance in view of the language of the Bellington case." He said that, looking at the license fee section from the standpoint of its effect on a trailer camp owner's income or profit, the $50 annual fee, to which plaintiff made no objection, could not be considered to have any real effect on the owner's return from his business. He observed that the monthly fee would be passed on to each trailer occupant, and that there was not a sufficient showing that it would thereby put the plaintiff out of business or seriously affect his trade by reason of competition with trailer parks in other municipalities where the total charge to a trailer tenant might be slightly lower. Plaintiff had attempted to show that he was operating at a loss or on a very small margin of profit, allowing for his own time and effort. As to this, the trial judge said that even if it were so, the amount of the fee, which was not on its face disproportionately large compared with revenue, need not be governed by the operating figures of one particular trailer camp owner who may or may not be a good businessman. He aptly pointed out that the Supreme Court had sustained, as not unreasonable, trailer camp license fees both greater in amount and having a much larger ratio to the monthly *368 rental charged the tenants by the operator than in the present case, referring to the Bellington and Edwards cases.
We are in general agreement with the conclusions reached by the trial judge in his oral opinion. Plaintiff's attack on the monthly license fee fixed by the ordinance is squarely answered by what the Supreme Court, speaking through Justice Heher, said in the Bellington case. We need not repeat all that was said there, including the court's distinguishing of the Salomon case, which involved a general revenue measure without any regulatory aspects whatsoever. As in Bellington, so here: the ordinance in question "is not a general municipal tax measure, as an end in itself, but is in essence a regulative police mechanism directed to the service of the public need in the particular area of governmental action by control through license and a license fee which may also, within reasonable bounds, be imposed for revenue as an incident of the police regulation, and by the same token a fee reasonably related to the regulated subjects and the public ends to be served." 17 N.J., at page 564. As Justice Heher went on to say:
"The assessment of the cost of a license and the ensuing governmental supervision and control is sustained by the correlative benefits to the public. * * * A license tax for revenue represents an exercise of the general taxing power. Thus, one is differentiated from the other, although the license fee for regulation alone also has the connotation of a tax as a charge on the business or pursuit for the cost of supervision in the public interest. * * * The powers are essentially different: one is to license and regulate under the police power; the other, to raise revenue under the general power to tax. But the two may be `unitedly exercised.' * * * And the assessment may still constitute a license fee proper rather than a tax for revenue even though the fee charged be in excess of the regulatory expenses and burdens. Where the primary object is police regulation, it does not necessarily matter that the incidental result is revenue above the actual cost of supervision and control of the business; that is not enough to render the return a tax for revenue rather than a license tax; e contra, where revenue is the principal objective of the tax, it is not sustainable under the police power alone. * * *." 17 N.J., at pages 564-565; (citations omitted)
Daniels v. Point Pleasant, 23 N.J. 357 (1957), cited by plaintiff, is not inconsistent with, nor do we consider that *369 it undercut, the Bellington rule. What the municipality was seeking to do in Daniels was to place the entire burden of increased municipal expenses on newly arriving residents, while retaining the older and lower tax rate for those already there. The medium was a building permit fee, and there is no authority for the use of such a fee for revenue purposes, as permitted by N.J.S.A. 40:52-1 and 2.
Plaintiff testified that he lost money on the trailer camp operation from 1951 through 1955. Calculating his net profit without considering the work he and his wife did in and about the camp, he said that in 1956 he had realized $1,265 on total gross receipts of $5,476. In 1957 he realized $2,757 on a total income of $7,660.57. His rental charge is a basic $32 per month per trailer site, plus the cost of electric power consumed by the occupants of each trailer determined by the meter, plus 50¢ per week for each child or other person in a trailer in addition to the husband and wife. The nearest trailer park, located two miles away in Branchburg Township, charges a rental of $28 to $30 a month, plus a charge for electricity used; and the license fees there are $25 annually for the trailer camp and $1 a week per trailer. Another Branchburg trailer camp charges $31 per month per trailer site plus the same extras as plaintiff.
We agree with the trial court that the license fee schedule fixed in the Readington Township trailer camp ordinance is neither prohibitive nor confiscatory. The monthly charge will undoubtedly be passed on to the individual trailer owner. There is no reason to believe, nor did plaintiff establish, that he will be unable to continue in business if he has to raise his rates. They already are slightly higher than those of nearby trailer camps; nonetheless, plaintiff has not only continued in business, but has managed to turn a losing enterprise into a gainful operation.
Plaintiff suggests that there is an element of discrimination in imposing a monthly license fee on trailers parked in his trailer camp, while those located on private land and which are of a more permanent nature are taxed on *370 an ad valorem basis; that if the latter method were used, the amount levied would allegedly be less than the $72 the municipality can collect for 12-month occupancy. This disregards the administrative difficulty of assessing and collecting a tax on trailers which enter and leave the community at varying times. An assessment against a trailer could be levied only if it were present at plaintiff's camp on October 1. N.J.S.A. 54:4-1. Next would come the difficulty of collecting the tax from the trailer owner who, without notice to the tax collector, could overnight drive his trailer to some distant municipality or state. Plaintiff could not be held responsible for this personal property tax, for the trailer belongs to its owner and not to him.
But even aside from the fact that the Bellington opinion implicitly holds against such an argument of discrimination, plaintiff's contention proves too much. Under our present tax structure all citizens who may enjoy municipal services furnished or available to them do not contribute equally, or even progressively according to their income, to the cost of such services. It is the real property owner who contributes by far the largest share. Although it may be said that trailer owners are dealt with differently from other non-landowners or owners of permanent trailers set down on private property, this does not bring them even close to contributing an amount equal to that contributed by landowners. As noted, the average landowner in Readington Township pays an annual tax of from $200 to $250. Plaintiff's tenants pay $72 a year, if they remain the full 12 calendar months, and they may take advantage of as much of available municipal services  or even more  as does any landowner.
More fundamentally, ad valorem taxation, and the imposition of license fees for revenue, each stand on separate and distinct constitutional and statutory bases. A license fee should be judged for reasonableness or excessiveness of burden in relation to other license fees, see Gilbert v. Town of Irvington, 20 N.J. 432 (1956)  not in relation to ad valorem taxes on other property. In the final analysis, the *371 license fee is exacted in relation to the privilege of doing business, the ad valorem tax on the mere presence of the property in the taxing district and in consideration of the general benefits of government extended to it.
The judgment is affirmed.