NELSON COONEY & SON, INC., PLAINTIFF-RESPONDENT, v. TOWNSHIP OF SOUTH HARRISON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DE-FENDANT-APPELLANT.

Argued November 9, 1970—Decided January 25, 1971.

*Mr. Joseph Mennite* argued the cause for defendant-appellant (*Mr. Fred A. Gravino,* attorney).

*Mr. John H. Mohrfeld, III* argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

HALL, J. ▇ Plaintiff, the sole mobile home park operator in defendant township, challenged, by this action in lieu of prerogative writ, various amendatory provisions of the township's ordinance licensing and regulating such parks. The attack with which we are concerned was directed to the validity of a 1968 amendment which increased, from $12 to $18, the amount of a monthly fee imposed upon the park operator for each mobile home space occupied in excess of one week during the previous month. The fee was declared to be imposed for revenue purposes. This monthly exaction, together with a $200 annual operating fee (which was not challenged and may well be said not to exceed beyond permissible limits the costs of regulation prescribed by the ordinance), represents the municipal charge for the yearly business license required by the ordinance.

The Law Division struck down the increase in the monthly fee as confiscatory and excessive on the basis that, while the increased fee bears a reasonable relation to the value of local governmental services furnished to the inhabitants of the park and properly includible in the monthly fee, it prevents a fair margin of profit to the operator and renders the park non-competitive wtih similar facilities in adjacent municipalities where the license fee is lower. Defendant was ordered to return to plaintiff the amount of the increase

($2904) which the latter had paid. The Appellate Division affirmed this ruling, as well as all other aspects of the trial court judgment, in an unreported decision adopting the opinion of the trial court. We granted certification on the township's petition. 56 *N. J.* 480 (1970).

The only question actually presented on this appeal — really raised for the first time in this court — is the propriety of considering profit margin and competitive ability in passing upon the validity of the amount of a municipal license fee for trailer parks. Resolution of that question depends upon and makes it necessary first to review, however, the deeper matter of the legitimate object and scope of such fees and the true nature thereof.[1]

The operation of plaintiff's 50 space park is typical. Each mobile home is individually owned. The owner leases a space for it from the park operator on a monthly rental basis. The operator furnishes water, sewage and other utility facilities and connections. The mobile homes, although of considerable size and fully equipped for permanent modern living and not simply transient camping facilities, are freely moveable by special towing equipment. Many remain in the same

---

[1] Plaintiff's suit also challenged the former $12 monthly fee as confiscatory and the inclusion in both figures of general governmental costs, especially the expense of educating school children residing in the park, which it contended could be met only by general property taxation and not by a special charge against mobile home owners. It attacked as well other ordinance provisions relating to the permissible number and size of trailer parks in the township and further sought a declaration with respect to the effect of the township's zoning ordinance, which was adopted during the litigation. That ordinance prohibited all trailer parks, thereby making plaintiff's operation a non-conforming use. 50% enlargement of such a use is, however, permitted as of right. Plaintiff claimed that this zoning provision impliedly repealed the limitation in the trailer park ordinance on the allowable number of spaces in a park and thus permitted it to increase the size of its park beyond that limitation. The trial court decided in favor of the township on all these contentions and they were included in a cross-appeal by plaintiff to the Appellate Division. Plaintiff did not cross-petition for certification from the affirmance of these rulings.

park for years; others move more frequently to similar parks elsewhere. The mobile home in a park is indeed a hybrid — a readily moveable one-family dwelling of substantially less cost and value than a conventional housing structure, owned by the occupant, but located somewhat temporarily in a semi-attached fashion on the land of another.

While resident in a park, the mobile home occupant receives all of the general benefits and particular services of the local and county government that are available to persons living in conventional housing accommodations as owners or tenants, and who pay for them, directly or indirectly, primarily through *ad valorem* property taxation on realty. Mobile homes, however, are not taxable, under present statutes in this state, as either real or personal property.[2] The park itself is taxed only on the value of the land and the improvements constructed thereon by the operator.

The space charge, almost universally imposed by New Jersey municipalities having mobile home parks within their boundaries as part of the license fee for the park, is expected to be and is in fact passed on to and paid by the trailer owner through inclusion in his space rental. Here, when the monthly fee went from $12 to $18, plaintiff increased the space rental from $45 to $51. The obvious pragmatic object of such a fee — and it was so testified by a member of the township governing body in this case — is to force mobile home residents to pay indirectly something, in lieu of property taxes, for the governmental benefits and services that they receive or are available to them, which otherwise would be obtained without charge and at the expense of the real property owners in the municipality.

Since New Jersey also has no special statute relating to the collection of revenue from mobile home park residents

---

[2]With respect to taxation as real property, see *Manhattan Trailer Court and Trailer Sales, Inc. v. Township of North Bergen*, 104 *N. J. Super*. 405 (App. Div. 1969) ; taxation of personal property, by reason of recent changes in our tax laws, is now largely confined to certain kinds of such property used in business.

to cover governmental benefits, as do many states,[3] authority for a municipality of this state to exact a fee for this purpose has to be found in our general business licensing statute. *N. J. S. A.* 40:52–1 and 2. Section 1 provides in pertinent part:

> The governing body may make, amend, repeal and enforce ordinances to license and regulate:
>
> \* \* \* \* \* \* \* \*
>
> d. \* \* \* trailer camps and camp sites \* \* \*.
>
> \* \* \* \* \* \* \* \*

Section 2 says:

> The governing body may fix the fees for all such licenses, *which may be imposed for revenue* \* \* \*. (Emphasis supplied).[4]

This case was framed and tried by both sides on the basic assumption that this authority to impose a business license fee "for revenue" legally encompasses the right to fix the

---

[3]For a discussion of the various methods utilized elsewhere, see Bartke and Gage, Mobile Homes: Zoning and Taxation, 55 *Cornell L. Rev.* 491, 519–526 (1970) ; Note, Toward An Equitable and Workable Program of Mobile Home Taxation, 71 *Yale L. J.* 702 (1962) ; Illinois Legislative Council, Bulletin 5–010, Taxation of Mobile Homes (1964) ; Ohio Department of Taxation, Taxation of House Trailers in Ohio and Other States (1958). A leading case sustaining taxation of mobile homes as real property is *New York Mobile Homes Association v. Steckel*, 9 *N. Y.* 2d 533, 215 N. Y. S. 2d 487, 175 *N. E.* 2d 151 (1961), and one approving a statutorily authorized monthly parking permit fee equal to actual costs of services furnished by the school district and the municipality is *Barnes v. City of West Allis*, 275 *Wis.* 31, 81 *N. W.* 2d 75 (1957).

[4]*N. J. S. A.* 40:52–1 covers a large number of businesses and instrumentalities used therein as the permitted subjects of municipal licenses. Essentially all are also proper subjects for police power regulatory ordinances, authorized by *N. J. S. A.* 40:48–1 and 2. But the latter power does not include the right to require a license ; and the inherent right to charge a fee in connection with a purely regulatory non-licensing ordinance has been said to be limited to an amount primarily designed to defray the costs of regulation. See *Daniels v. Point Pleasant*, 23 *N. J.* 357, 361 (1957) ; *Edwards v. Mayor and Council of Borough of Moonachie*, 3 *N. J.* 17, 21 (1949).

amount of that fee in reasonable relation to the special impact of the particular business upon local governmental benefits and services and the financial consequences thereof. The controversy below rather revolved around whether governmental costs which would ordinarily be covered by *ad valorem* taxation could properly be included in a license fee and so in effect be chargeable to mobile home owners as a peculiar class, as well as the method of computation thereof (see footnote (1), *supra*). The basic assumption and the scope and method of computation utilized here, approved by the trial judge, are correct and adequately grounded in prior decisions of this court.

The present view of the basic meaning and scope of "for revenue" in *N. J. S. A.* 40:52–2 stems from *Salomon v. Jersey City,* 12 *N. J.* 379 (1953). There the city of Jersey City passed an ordinance requiring all businesses having a situs in the city to be licensed and to pay very substantial license fees. The ordinance had no regulatory features and admittedly was designed only to provide additional municipal revenue. There was no claim that the businesses exerted any special impact upon the governmental services or finances. All of them were clearly subject to taxation, directly or indirectly, through *ad valorem* property levies. The ordinance was struck down, first, on the ground that *N. J. S. A.* 40:52–1 did not authorize licensure of all businesses but only of the categories specified therein, and secondly, because the "for revenue" provision of *N. J. S. A.* 40:52–2 was not intended to be a grant of broad and untrammeled taxing power to municipalities. The court's view of the scope of the licensing statute was summed up in the following paragraph, which, of course, has to be read in the light of the factual pattern involved:

In the light of all of the foregoing we consider that the primary and overriding purpose of the legislature in enacting *R. S.* 40:52–1 and *R. S.* 40:52–2 was to authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally

to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs. (12 *N. J.* at 390).

The first post-*Salomon* case in which the matter of special impact was considered is *Bellington v. East Windsor Township*, 17 *N. J.* 558 (1955).[5] There a trailer park licensing ordinance, containing customary regulatory features, imposed, for revenue, a license fee of $200 per annum plus a $2 weekly space charge. The fee was attacked primarily on the basis of *Salomon*. That case was distinguished and limited generally on the bases just mentioned. The court sustained the principle of the fee as within the licensing statute on the basis of the special impact of the regulated business in this language:

> Here, we have a fundamentally regulative ordinance in the undoubted exercise of the police power to an essential public end, levying also a tax for revenue as an incident of the regulation, and so a tax, complementing the license fee proper, that is legally sufficient if it be reasonably related to the value of the public services and facilities afforded the users of the regulated areas and the benefits of the regulations themselves and the consequent governmental supervision and control; and thus a correlated exercise of both the police and the taxing powers conformably to the statutory grant.
>
> The *quantum* of the fee of necessity depends upon the nature and circumstances of the regulated category. The tax concept may be expressed in terms of the duty of the sharers of the benefits of government to bear its burdens equitably and justly. Trailer camps are peopled in great part by transients who use and enjoy the community's services and facilities without sharing the cost; and the inclusion in the license fee of a tax designed in some measure to equalize the common burden is within the statutory tax for revenue as an incident of the police regulatory power. In *Edwards v. Borough of Moonachie, supra*, we cited, for example, a substantial increase

[5]An earlier pre-*Salomon* case involving a trailer park license fee ordinance including a weekly space fee, *Edwards v. Mayor and Council of Borough of Moonachie*, 3 *N. J.* 17 (1949), may be considered to have inferentially approved the special impact theory as to the amount of the license fee. There the court employed the terminology of the *quantum* of the fee being "consonant with the value of the privilege." 3 *N. J.* at 26. The case dealt mainly with a claim that the fee was confiscatory as far as a fair profit was concerned, a question to be dealt with *infra*.

in the school enrollment and the special health and sanitation problems attending the operation of the trailer court. And such is also the case here. (17 *N. J.* at 566–567).

This special impact approach has since been consistently followed in the later trailer park license fee cases. *Konya v. Readington Township,* 54 *N. J. Super.* 363 (App. Div. 1959), *affirmed o. b.* 30 *N. J.* 556 (1959); *Monmouth Junction Mobile Home Park v. South Brunswick Township,* 107 *N. J. Super.* 18 (App. Div. 1969), certif. den., 55 *N. J.* 30 (1969). The thesis was applied in another context in *Garden State Racing Association v. Cherry Hill Township,* 42 *N. J.* 454 (1964). There a large race track was situated in the municipality, accessory to which were numerous commercial parking lots, operated by the track and others, and accommodating thousands of cars on race dates. The traffic thus generated had a severe impact upon the maintenance of township roads and required additional local police services. A parking lot license ordinance was adopted containing regulatory features and imposing an annual license fee for each lot, graduated according to capacity, plus five cents for each car parked. $20,000 annual revenue therefrom was estimated, which it was testified would be consumed by the costs of enforcement of the regulatory features of the ordinance and the special additional burdens on local governmental services. The basis of the license fee was held to be valid, the court stating that it could not be said that the anticipated revenue bore an unreasonable relation to the impact of the operation upon the community.

The true rationale of this line of cases is that when a business, subject to regulation and license under *N. J. S. A.* 40 :52–1, by reason of its presence and operation in a community, has a special impact on local government and its finances, not otherwise adequately met by any *ad valorem* property tax levied upon it, the fee charged for the license may be fixed at an appropriate figure commensurate with, and which does not within reasonable limits exceed, the added governmental burden of that impact as well as the costs of

regulation. Such a fee is a valid excise within the "for revenue" authority of *N. J. S. A.* 40:52–2 and, in the unique case of mobile home parks, may be imposed under the statute in the first instance upon the park operator, who by the establishment of his business has brought the burden into and upon the community, even though it is realistically intended and expected to be the ultimate obligation of his tenants, the mobile home owners. It is an appropriate means of collecting their proper and just contribution to the costs of local government, the benefits of which they enjoy.

The proper computation of such a fee in the case of mobile home parks is not an easy matter and there may well be several different acceptable methods of calculating it. It may initially be observed that, while, as in the case of assessment of property taxes, mathematical exactness is not required, a space charge may, in fairness to all, have to be adjusted up or down fairly frequently as local government costs or the impact of the park changes materially.

Here, speaking generally, the township sought to support the reasonable relation of the $18 monthly fee by financial statistics of the past few years based on the per capita amount of the property tax levies for municipal and county government for each resident of the municipality and on the average cost per pupil of the school tax levy for both the township grade school and the regional secondary school. The sums were multiplied, respectively, by the number of residents of the park (who represented better than 10% of the total population) and by the number of school children living in the park (who, in the case of the grade school, amounted to about 13% of the total enrollment) to obtain a figure that was said to represent the total additional cost of governmental services brought about by the existence of the park. Subtraction from this figure of the amount received by way of the license fees and real estate taxes upon the park showed a substantial deficit for the years when the former $12 monthly space charge was in effect and even after the $18 figure was imposed. The trial court used only the education cost

figures, which, treated alone and similarly, still showed a clear excess over all revenues received from the park. Indeed, the figures on this basis would justify a higher space fee than the $18 figure.

Although theoretical objection may be made to this method of computation of special impact, we are not prepared to say, for present purposes, that it is so unreasonable or arbitrary as to be an invalid method. See *Barnes v. City of West Allis*, 275 *Wis.* 31, 81 *N. W.* 2d 75 (1957). For example, it may be said to violate the philosophy of property taxation that contributions to municipal, school and county expenses be made on the basis of the value of real property and not per capita or according to services actually utilized by the particular resident. *Cf. Daniels v. Point Pleasant*, 23 *N. J.* 357 (1957). But, while a computation based on the average value of all trailers in the park (adjusted to the local property tax assessment ratio) multiplied by the current tax rate and applied on a monthly basis per trailer could be another acceptable method, it might well produce too low a figure compared to average property taxes imposed on conventional dwellings, because the value of even an elaborate mobile home would generally be considerably less than that of a low cost standard house, while the governmental services available or utilized would be the same.

In essence, the true nature of a mobile home park licensing fee based and computed as here is a tax realistically imposed upon the mobile home resident, through the park operator, as his share of the cost of local government. This leads us back to the precise question before us — when such is the situation, is the resulting margin of profit of the park operator and his competitive position of any legal significance in passing upon the validity of the amount of the fee in the particular instance?

It may be noted in passing that the trial court found that the $12 monthly fee was "clearly non-confiscatory" from the standpoint of profit margin, but that the $18 figure excluded a reasonable margin of profit. It is difficult to follow

this factual conclusion because the $6 increase was simply passed on through a like increase in the monthly space rental. Since the record revealed that there was no drop in the number of spaces occupied, the dollar profit would remain the same and the profit percentage would be only slightly less provided other operating expenses remained substantially the same. In fact, plaintiff's evidence showed a loss (based largely on excessive depreciation and nonrecurring operating expenses) for both 1967 when the $12 fee prevailed and for 1968 when the fee increase took effect, but the 1968 loss was substantially less and very slight. The trial judge also decided that the increased fee would make plaintiff noncompetitive with other mobile home parks in this area of South Jersey because plaintiff had to charge a higher monthly space rental than the other parks located in municipalities where the monthly license fee was only $10 or $11. Again the conclusion seems unsupported since plaintiff lost no business as a result of the fee and rent increase and the testimony of the other park operators was, in effect, that there is such a shortage of mobile home parks in the area compared to the demand, that vacancies anywhere are practically nonexistent.

Quite apart from these factual considerations and dealing with legal aspects, the fee, as we have pointed out, is an excise legitimately imposed to require mobile home owners in a park to pay a reasonable share of the costs of local government which they enjoy. When the amount is computed on the proper basis of the reasonable cost of governmental services and benefits furnished or available, as here, the impost takes on the attributes of a property tax for the purposes of the point under discussion. The general law is well established that a tax, properly based and assessed, is not invalid merely because it is onerous upon and might destroy a particular business. 84 *C. J. S. Taxation* § 4, *p.* 46. See *Fox v. Standard Oil Co.,* 294 *U. S.* 87, 99–102, 55 *S. Ct.* 333, 79 *L. Ed.* 780, 789–790 (1935) ; *Leo Feist, Inc.*

*v. Young,* 46 *F. Supp.* 622, 630 (E. D. Wis. 1942); *Dixie Greyhound Lines v. McCarroll,* 22 *F. Supp.* 985, 987 (W. D. Ark. 1938). Those who enter upon the business take that risk. The principle should apply as well in the situation at bar. In addition it would be chaotic were the government to have to be concerned with how well or poorly a particular entepreneur operated his business and the dollar effect of an otherwise legitimate tax thereon.

It is true that prior trailer park license fee cases have adverted to or considered profit margin and competitive position of the challenging plaintiff in determining the validity of the amount of such a fee. See *Hoffman v. Neptune City,* 137 *N. J. L.* 485 (Sup. Ct. 1948); *Michaels v. Township Committee of Township of Pemberton,* 3 *N. J. Super.* 523, 527–528 (Law Div. 1949); *Edwards v. Mayor and Council of Borough of Moonachie,* 3 *N. J.* 17, 25–26 (1949); *Bellington v. East Windsor Township, supra* (17 *N. J.* at 567–569); *Konya v. Readington Township, supra* (54 *N. J. Super.* at 369–370); *Monmouth Junction Mobile Home Park v. South Brunswick Township, supra* (107 *N. J. Super.* at 27–28). Only in *Hoffman* was the fee struck down as confiscatory and in that case, as well as in most of the others, there was no precise proof, as here, that the amount of the fee bore a reasonable relation to costs of governmental services occasioned by the presence of the park. Moreover, in none of the cases does it appear that the contention was advanced, as it is now, that profit margin and competitive ability are improper considerations when the fee is demonstrated to be based on the special impact of the enterprises upon local governmental benefits and finances plus regulatory costs.

Judicial reliance upon the effect of the amount of a trailer park license fee derives from decisions passing upon very high fees for other types of businesses or some segment or instrumentality thereof. These cases go both ways, in validating, as proper revenue measures, or in striking down, as too financially oppressive or discriminatory, such fees, in factual

patterns frequently somewhat difficult to distinguish. Detailed analysis is unnecessary for present purposes. Representative decisions are: *Levin v. Asbury Park,* 9 *N. J. Misc.* 515, 154 *A.* 742 (Sup. Ct. 1931) (a $500 monthly fee for itinerant vendors approved as not excessive in view of the peculiar and temporary character of the business involved); *The Great A. & P. Tea Co., Inc. v. Board of Com'rs of Camden,* 122 *N. J. L.* 47 (Sup. Ct. 1939) (a $10,000 annual license fee for self-service food stores invalidated as confiscatory and discriminatory); *Giant Tiger Corp. of Camden v. Camden,* 122 *N. J. L.* 240 (Sup. Ct. 1939) (ordinance upheld requiring license for any food store renting more than four concessions therein and imposing $200 annual license fee for each such concession; amount of fee found not confiscatory); *Gurland v. Kearny,* 128 *N. J. L.* 22 (Sup. Ct. 1942) ($300 annual license fee for each vehicle peddling ice cream held excessive and prohibitory since it would consume 30% of gross sales and was much higher than for any other peddling vehicle); *Ring v. Mayor and Council of Borough of North Arlington,* 136 *N. J. L.* 494 (Sup. Ct. 1948), *affirmed o. b.* 1 *N. J.* 24 (1948), *appeal dismissed* 335 *U. S.* 889, 69 *S. Ct.* 250, 93 *L. Ed.* 427 (1949) ($250 annual license fee for each location where used cars sold upheld; no proofs establishing it to be confiscatory); *Gilbert v. Town of Irvington,* 20 *N. J.* 432 (1956) (license fee of $100 per year for each milk vending machine held discriminatory and confiscatory).

 The point is that, in these cases which applied the financial effect of the license fee upon the particular business, any special impact of the entity upon municipal services and finances was not involved. In most of the cases the ordinances had few, if any, regulatory features and the cost of enforcement or of any regulation was minimal. The rationale of the decisions striking down license fees as too oppressive may often be divined to be that the real purpose of the fee was an improper one — to stifle competition with

some other existing format of the same business.[6] Quite different is the situation before us in which the trailer park monthly license fee was computed with respect to and has a close relation to the special financial impact of the enterprise upon local governmental services and finances. We are firmly of the opinion that, at least when such is the situation and the fee is in reality in lieu of property taxes and to compel the mobile home owner to pay some share of the cost of governmental benefits received or available, consideration of the effect of the fee upon the park operator's profit and his competitive position cannot be justified and is improper, any expressions to the contrary in earlier trailer park license fee cases notwithstanding.

The judgments of the Appellate Division and the Law Division insofar as they invalidated the increase in the monthly license fee and ordered defendant to repay to plaintiff the amount of the increase are reversed and the cause is remanded to the Law Division for the entry of a modifying judgment in favor of defendant with respect thereto. No costs.

JACOBS, J., (concurring) : I would reverse because there was no satisfactory factual showing that the new fee was either unreasonable or otherwise improper. But I would not abandon our long-standing legal doctrine that business license fees imposed under statutes such as *N. J. S. A.* 40:52-1 and 2 may not be so high as to be oppressively prohibitive or confiscatory. That doctrine has served as a just and wholesome restraint, has comported with the legislative contemplation, and has been repeatedly approved and applied by our courts. *See Gurland v. Kearny,* 128 *N. J. L.*

---

[6] We are not called upon to and are not to be understood as expressing any opinion as to the validity of the amount of any of the types of license fees involved in the cases just referred to in the light of the limitations placed upon *N. J. S. A.* 40:52-1 and 2 by *Salomon v. Jersey City, supra* (12 *N. J.* 379) heretofore quoted. The *Gilbert* case (20 *N. J.* 432) did state the holding of *Salomon* as one basis for invalidating the license fee.

22, 25–26 (*Sup. Ct.* 1942); *Hoffman v. Neptune City*, 137 *N. J. L.* 485, 487–488 (*Sup. Ct.* 1948); *Michaels v. Twp. Committee of the Twp. of Pemberton*, 3 *N. J. Super.* 523, 528 (*Law Div.* 1949); *Edwards v. Mayor, etc., of Borough of Moonachie*, 3 *N. J.* 17, 25 (1949); *Bellington v. East Windsor Tp.*, 17 *N. J.* 558, 567–569 (1955); *Gilbert v. Town of Irvington*, 20 *N. J.* 432, 437 (1956); *Konya v. Readington Tp.*, 54 *N. J. Super.* 363, 369 (*App. Div.*), aff'd, 30 *N. J.* 556 (1959); *Monmouth Jct. Mob. Home Pk. v. So. Brunswick Tp.*, 107 *N. J. Super.* 18, 28 (*App. Div.*), certif. denied, 55 *N. J.* 30 (1969); *see also* 9 McQuillin, *Municipal Corporations* § 26.33, *pp.* 79–80 (3d ed. *Revised* 1964); 53 *C. J. S. Licenses* § 19 *pp.* 519–521 (1948).

JACOBS, J. concurring in result.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.