ROY WEINER, PLAINTIFF-APPELLANT, v. BOROUGH OF STRATFORD IN THE COUNTY OF CAMDEN, RALPH P. JONES, BOROUGH CLERK OF SAID BOROUGH, JOSEPH N. WARD, *ET AL.*, MEMBERS OF THE BOROUGH COUNCIL OF SAID BOROUGH, AND EDWARD ARENTZEN, CHAIRMAN, *ET AL.*, MEMBERS OF THE PLANNING BOARD OF SAID BOROUGH, DEFENDANTS-RESPONDENTS.

Argued March 22 and 29, 1954—Decided May 3, 1954.

*Mr. Charles A. Cohen* argued the cause for appellant (*Mr. Isadore H. Herman,* attorney).

*Mr. Leighton J. Heller* argued the cause for respondents.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. An ordinance of the defendant borough provides that no person may "engage in or carry on any business, trade or calling" in the borough except as he obtains a license from the borough clerk and pays an annual license fee. But an application for a license to conduct a new business is to be made not to the borough clerk but to the planning board "which shall forward its findings with its recommendations to the Borough Council" and "the Council shall decide on granting or denying the license."

Plaintiff proposes to conduct an auction store as a new business at a location owned by him on White Horse Pike in a district where an auction store is a permitted use under the borough zoning ordinance. He duly filed his application for a license with the planning board. The borough council denied the license upon the planning board's recommendation. Plaintiff brought this proceeding in lieu of prerogative writ to set aside the ordinance as invalid *in toto* or, alternatively, to have the new business provision adjudged invalid and the defendants ordered to issue a license to him upon his payment of the required license fee. From a judgment of the Law Division dismissing his complaint after trial he appealed to the Appellate Division, and we certified the appeal here of our own motion.

The borough concedes that the ordinance invokes the authority conferred upon municipalities by *R. S.* 40:52–1 and *R. S.* 40:52–2 to license and regulate businesses described therein. Plaintiff therefore argues that, because the ordinance provides "that the fees herein imposed for such licenses are imposed for revenue," it is purely a revenue raising measure outside the authority granted to municipalities by those statutes and is invalid under our decision in *Salomon v. Jersey City*, 12 *N. J.* 379 (1953). In that case we struck down a Jersey City licensing ordinance which Mr. Justice Jacobs in his opinion for the court characterized to be a "comprehensive municipal license tax imposed without any accompanying regulation." The opinion noted that *R. S.* 40:52–1 and *R. S.* 40:52–2 go no further than "to authorize

municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs."

Plaintiff's contention is not without merit. Certainly the ordinance is singularly wanting in regulatory features. Apart from the provision applicable specifically to new businesses, the only provisions suggestive of regulation are those which condition the issuance of licenses upon compliance by the licensee with safety laws and ordinances, and, in the case of theatres and other places of amusement, require the written certification of such compliance from the building inspector and the chief of the fire department. The annual license fees range from $5 to $100 (all but eight businesses pay a $5 fee; an auction store pays the $100 fee), and the paucity of regulatory provisions is strongly suggestive that these fees are unreasonably in excess of the regulatory costs and are in actuality imposed solely to raise revenue.

However, the disparity is not so obvious that we can reach a conclusion without evidence of the relation of the fees to regulatory costs, and there is no evidence bearing upon that question in the record. In the circumstances we are unable to determine the question. Moreover, plaintiff does not complain of the $100 license fee chargeable for an auction store and is willing to pay it.

The decision thus must be turned upon the alternative ground urged, namely, that the new business provision is invalid. We think that that provision is unquestionably invalid and cannot stand. The borough correctly argues that a municipality has power to enact a licensing and regulatory ordinance as a police measure, referring us not only to R. S. 40:52–1 and R. S. 40:52–2 but also to R. S. 40:48–2 under which the municipality has a broad grant of police powers to enact ordinances not prohibited by or inconsistent with the Federal or State Constitutions or other statutes, and which are deemed by the municipality to be "necessary and proper

for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." See *Fred v. Mayor and Council, Old Tappan Borough*, 10 *N. J.* 515 (1953) ; *cf. Magnolia Development Co., Inc., v. Coles*, 10 *N. J.* 223 (1952). However, unless the provisions of a licensing and regulatory ordinance vesting discretion in licensing officials to grant or deny a license provide adequate standards to govern the deliberations of the officials having the discretionary power, the provisions must be struck down as utterly void. This principle has been too long firmly settled to require elaboration. *Lipkin v. Duffy*, 119 *N. J. L.* 366 (*E. & A.* 1938) ; *Librizzi v. Plunkett*, 126 *N. J. L.* 17 (*Sup. Ct.* 1940) ; *Phillips v. Town of Belleville*, 135 *N. J. L.* 271 (*Sup. Ct.* 1947) ; *Finn v. Municipal Council of City of Clifton*, 136 *N. J. L.* 34 (*E. & A.* 1947) ; *Mayor & Council of City of Hoboken v. Bauer*, 137 *N. J. L.* 327 (*Sup. Ct.* 1948) ; *Adams Theatre Co. v. Keenan*, 12 *N. J.* 267 (1953). The reasons underlying the principle are summarized in 9 *McQuillin, Municipal Corporations, sec.* 26.64, as follows:

"The fundamental rules that a municipal legislative body cannot * * * vest arbitrary or unrestrained power or discretion in * * * itself, and that all ordinances must set a standard or prescribe a rule to govern in all cases coming within the operation of the ordinance and not leave its application or enforcement to ungoverned discretion, caprice or whim are fully applicable to the administration and enforcement of ordinances requiring licenses or permits and imposing license or permit fees or taxes. Accordingly, an ordinance requiring a license or permit, or imposing a license fee or tax, should provide all of the terms under which the license or permit is to be issued and prescribe a uniform rule applicable to all of the class to which it is intended to apply, * * *. * * * ungoverned discretion in officials, * * *, in the enforcement of ordinances, makes possible, if not probable, abusive discrimination in violation of the constitutional guaranty of due process and equal protection of the law, and also violates the requisite of reasonableness pertaining to all ordinances. The requirement of definite standards and conditions for the guidance of authorities in the execution of discretionary power in licensing sometimes is called the 'ordinary business rule.' "

We search in vain for any general rule of action or standard of conduct in this ordinance governing the borough

council in its determination whether to grant or deny the application for a license to conduct a new business. Plaintiff also attacks the planning board's part in the procedure as outside any function of such bodies authorized by *R. S.* 40:55-1 *et seq.*, but we pass that question. At all events, the complete absence of any standards guiding the determination of the borough council, the body with the power of ultimate decision, renders the new business provision wholly invalid.

This very record illustrates the error into which officials will fall when the ordinance does not provide the proper standards to control the exercise of their discretion. It appears that while some point was made of increased traffic hazards which it was thought would be created by an auction store operation, the true reason for denial of the license to the plaintiff was more probably that ascribed by the borough clerk to the planning board, namely, "that in the interest of the people of Stratford, a public auction is not needed as it would affect a number of business establishments which have been serving the town over a number of years." This is a "subversion of competition  *  *  *  not in the public interest"; the police power "must be directed to a legitimate end, *i. e.*, the protection of a basic interest of society rather than the mere advantage of particular individuals." *N. J. Good Humor, Inc. v. Board of Com'rs of Borough of Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940) ; *Sheffield Farms Co., Inc., v. Seaman,* 114 *N. J. L.* 455 (*Sup. Ct.* 1935) ; *cf. Family Finance Corp. v. Gaffney,* 11 *N. J.* 565 (1953).

As it plainly appears that this ordinance must be revised by the municipality if it is to conform with the enabling statutes as interpreted by the decisions, we mention another aspect requiring correction. *R. S.* 40:52-1 and *R. S.* 40:52-2 do not authorize municipalities to license and regulate all businesses, but only those described therein. *City of Absecon v. Vettese,* 13 *N. J.* 581 (1953). This ordinance exceeds permissible bounds in embracing "any business, trade or calling" and "any business, trades, professions or occupations." Plaintiff makes no point of this imperfection, perhaps because the ordinance specifies "auction store or out-

door auction" among the businesses licensed and regulated therein, and *R. S.* 40:52–1 (*i*) includes "Auctioneers and their business" among the businesses which may be licensed and regulated.

The judgment of the Law Division is reversed and the cause remanded with direction to enter a judgment ordering defendants to issue a license to plaintiff for an auction store upon his payment of the $100 license fee.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.