784 A.2d 1214

BTD–1996 NPC 1 L.L.C., A DELAWARE LIMITED LIABILITY COM-
PANY, PLAINTIFF–RESPONDENT, v. 350 WARREN L.P., A
NEW JERSEY LIMITED PARTNERSHIP, DEFENDANT.

HUDSON COUNTY SHERIFF, APPELLANT.

Argued September 17, 2001—Decided November 14, 2001.

*Frederick P. Niemann*, Assistant Monmouth County Counsel, argued the cause for appellant (*William W. Northgrave*, Hudson County Counsel, attorney; *Mr. Niemann* and *Robin Moses*, Assistant County Counsel, on the briefs).

*Matthew V. DelDuca*, argued the cause for respondent (*Dechert Price & Rhoads*, attorneys; *Mr. DelDuca* and *Stacey O. Steinmetz*, on the briefs).

*Stephen E. Trimboli*, argued the case for *amicus curiae* Sheriff's Association of New Jersey (*Courter, Kobert, Laufer & Cohen*, attorneys; *Mr. Trimboli* and *Michael A. Shadiack*, on the brief).

*Donald J. Einhorni*, submitted letters in lieu of brief on behalf of *amicus curiae* Hunterdon County Sheriff (*Gaetano M. De Sapio*, attorney).

*Fredrick P. Niemann*, Assistant Monmouth County Counsel, submitted a letter in lieu of brief on behalf of *amicus curiae* Monmouth County Sheriff (*Malcolm V. Carton*, Monmouth County Counsel, attorney).

*Ronald Kevitz*, Morris County Counsel, submitted letter briefs on behalf of *amicus curiae* Morris County Sheriff.

*Thomas C. Miller*, Somerset County Counsel, submitted a letter brief on behalf of *amicus curiae* Somerset County Sheriff.

*Carol I. Cohen*, Union County Counsel, submitted a letter in lieu of brief on behalf of *amicus curiae* Union County Sheriff.

The opinion of the Court was delivered by

STEIN, J.

This appeal requires our review of a Chancery Division determination, affirmed as modified by the Appellate Division, *BTD–1996 NPC 1, L.L.C. v. 350 Warren, L.P.*, 333 *N.J.Super.* 476, 755 *A.*2d 1236 (2000), holding unconstitutional as applied to plaintiff a provision of *N.J.S.A.* 22A:4–8 authorizing the collection of a Sheriff's fee based on a settlement that occurred subsequent to the entry of a final judgment of foreclosure and issuance of a Writ of Execution. The Chancery Division determined that the fee in question was essentially equivalent to a tax. The Appellate Division agreed, a divided panel of that court also concluding that the levy was unenforceable in the absence of legislative intent to impose a tax on the users of Sheriffs' services. *Id.* at 484, 755 *A.*2d 1236.

We conclude that the record before us clearly is inadequate to support the Chancery Division's conclusion that the charge authorized by the statute " 'is intended primarily to raise revenue, and not to compensate the governmental entity for the cost of providing the service.' " *Id.* at 479, 755 *A.*2d 1236. Moreover, absent any procedural challenge to the enactment of *N.J.S.A.* 22A:4–8, see *N.J. Const.* art. IV, § 6, ¶ 1 (requiring that revenue bills originate in the General Assembly), we disagree with the holding of the majority below that the statute, if determined to be a tax, is unenforceable absent a legislative intent to impose a tax. Accordingly, we reverse the judgment below.

I

The facts are essentially undisputed. In May 1997, plaintiff BTD 1996, NPC 1, L.L.C. (BTD) filed a complaint in foreclosure against 350 Warren L.P. (350 Warren). In December 1997, the court entered a judgment in foreclosure in the amount of

$3,830,913.23, and issued a Writ of Execution. In response to BTD's request, the Hudson County Sheriff scheduled a foreclosure sale and required BTD to pay a $1000 deposit to be applied against the Sheriff's expenses. The Sheriff scheduled the sale for July 9, 1998, placing the required notices of sale at the premises and in legal advertisements in local newspapers. The parties stipulated that the actual cost of the direct services performed by the Sheriff's office in preparing for the sale—exclusive of indirect costs for personnel, equipment, supplies, office space and other expenses essential to the operation of the Sheriff's office—amounted to $974.14.

Prior to the sale, BTD requested that the Sheriff's office cancel the sale, informing them that the underlying dispute had been resolved by 350 Warren's payment of $2,400,000. Pursuant to *N.J.S.A.* 22A:4-8, the Sheriff sent BTD an invoice for $30,408.64, representing the fee for services rendered in connection with the foreclosure proceeding. That statute, entitled "Fees and mileage of sheriffs and other officers," provides in pertinent part:

> When a sale is made by virtue of an execution the sheriff shall be entitled to charge the following fees: On all sums not exceeding $5,000.00, 4%; on all sums exceeding $5,000.00 on such excess, 2½%; the minimum fee to be charged for a sale by virtue of an execution, $20.00.
>
> . . .
>
> When the execution is settled without actual sale and such settlement is made manifest to the officer, the officer shall receive ½ of the amount of percentage allowed herein in case of sale.

After BTD refused to pay the Sheriff's fee, the Hudson County Sheriff instituted proceedings in the Chancery Division through an Order to Show Cause to compel payment. The Sheriff's supporting papers essentially related the relevant facts supporting the demand for payment of the fee. The papers in opposition, consisting of a brief and certification by an attorney associated with BTD's counsel, alleged that the Sheriff's direct costs of $971.14 were facially disproportionate to the fee assessed against BTD. No other proofs were proffered by either party. After the initial hearing on the Sheriff's application, the Chancery Division ordered that notice of the proceeding be provided to the Attorney

General, see *R.* 4:24–4, and also permitted Warren, Somerset, Hunterdon, Morris and Monmouth counties, as well as the Sheriff's Association of New Jersey, to participate as *amici curiae.* The Attorney General declined to participate.

On the next hearing date, the Chancery Division dismissed the Sheriff's application, holding that *N.J.S.A.* 22A:4–8, as applied to BTD, imposed a tax, and that the tax was unenforceable pursuant to art. 4, § 7, ¶ 4 of the New Jersey Constitution, which provides that "every law shall embrace but one object and that shall be expressed in the title." The court reasoned that *N.J.S.A.* 22A:4–8 violated that constitutional mandate because its title—"Fees and mileage of sheriffs and other officers"—does not disclose that the statute imposed a tax. Explaining its conclusion that the fee at issue was essentially equivalent to a tax, the court observed

that *N.J.S.A.* 22A:4–8 is unconstitutional as applied to the plaintiff in this case, where the disproportion between the charge and the cost of the service is excessive, the charge imposed is intended primarily to raise revenue, and not to compensate the governmental entity for the cost of providing the service. *Resolution Trust v. Lanzaro* [140 *N.J.* 244, 658 *A.*2d 282 (1995)]. As a result, the charge is essentially the equivalent of a tax, measured by the sale price of the foreclosed property. [I]t is apparent in this case that the charge is grossly disproportionate to the cost of the services rendered under any measure, and it is premised solely on the statutory authorization appearing in 22A:4–8, which permits the Sheriff to receive one-half of the amount of the percentage allowed in the event a sale is made.

A divided panel of the Appellate Division affirmed the Chancery Division's judgment. The entire court agreed that the fee imposed constituted a tax because the amount charged was disproportionate to the value of the services rendered. The majority rejected the trial court's view that the single object clause of the constitution rendered the statute unenforceable, observing that " '[t]he constitutional provision is complied with when the title gives notice to the Legislature and the public of the general purpose of the act.' " 333 *N.J.Super.* at 483, 755 *A.*2d 1236 (quoting *General Public Loan Corp. v. Director of Div. of Taxation,* 13 *N.J.* 393, 403, 99 *A.*2d 796 (1953)). Nevertheless, the court held that the statute could not be enforced in the absence of evidence that the Legislature intended to impose a tax on the

users of Sheriffs' services. The court stated that "we cannot enforce a tax where the Legislature did not intend to impose one." *Id.* at 484, 755 A.2d 1236 (citing *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 529–30, 197 A.2d 673 (1964) and *Fedders Fin. Corp. v. Director, Div. of Taxation,* 96 *N.J.* 376, 386, 476 A.2d 741 (1984)). The dissenting member disagreed that the statute could not be enforced, asserting that the majority had disregarded the presumption of validity to which the statute was entitled. *Id.* at 491–92, 755 A.2d 1236 (Steinberg, J., dissenting).

## II

### A

Although the Appellate Division opinion, *id.* at 482–83 n. 4, 755 A.2d 1236, refers to a predecessor statute to *N.J.S.A.* 22A:4–8 enacted in 1948, L. 1948, c. 273, our research suggests that the statutory roots of *N.J.S.A.* 22A:4–8 go back at least as far as 1799. In *Sinnickson v. Gale,* 16 *N.J.L.* 21 (Sup.Ct.1837), the Supreme Court of Judicature determined that the sheriffs' fee statute then in effect contemplated that the fee would be assessed on the basis of the amount generated for the party executing on the property, and not on amounts realized in excess of that which was required to satisfy the execution. *Id.* at 22. In its opinion the court noted that an earlier version of the statute, enacted in 1799, allowed the Sheriff " 'for serving every execution, if for one hundred Dollars or less, one dollar; and if above that sum, two cents on every dollar, *to be computed* on the debt, or damages, paid, or secured to the plaintiff.' " *Id.* at 21. An 1823 amendment reduced the fee to two percent on sales up to $1,000 and one percent on the excess; but in cases of settlement without actual sale the Sheriff was allowed fee of one percent up to $1000 and one-half of one percent on any excess.

In *Sturges v. Lackawanna and Western Railroad,* 27 *N.J.L.* 424 (Sup.Ct.1959), the Sheriffs of Hunterdon and Warren Counties had executed on defendants' property to facilitate plaintiff's effort

to collect a judgment for $388,912.88. Plaintiff subsequently withdrew the executions, and the Sheriffs severally sought to collect, based on the amount of the judgment, "one-half of the amount of percentage allowed in cases of sale" as authorized by the statute then in effect. *Id.* at 426. The court determined that although the Sheriffs were entitled to compensation, the fee should be calculated on the basis of the value of the goods levied on, rather than on the amount of the underlying judgment. *Id.* at 426–27.

In the context of the issue before us, *Sinnickson* and *Sturges* demonstrate the longstanding legislative authorization and judicial recognition of the practice of compensating sheriffs for their services in execution sales on the basis of the amount of the underlying obligation or settlement.

### B

Because this appeal requires us to determine whether plaintiff's facial challenge to the validity of *N.J.S.A.* 22A:4–8 should be sustained, we deem it necessary and appropriate to reiterate the basic legal principles that inform our inquiry. This Court in *Bellington v. East Windsor Township,* 17 *N.J.* 558, 564–65, 112 *A.*2d 268 (1955), explained the essential distinction between regulatory statutes and statutes designed primarily to raise revenue:

> There is a basic distinction between a local legislative act primarily regulative of a business, trade, profession, or calling in the exercise of the police power to serve the common need and the use of the delegated power to tax the pursuit for revenue. In the first case the license fee is ordinarily the means of defraying the expense fairly attributable to the regulative process, while the broader sovereign power to tax for revenue to serve a public purpose of a general nature is confined by constitutional limitations, the terms of the grant itself, and the rule of reason and good discretion.
>
> The assessment of the cost of a license and the ensuing governmental supervision and control is sustained by the correlative benefits to the public. A license tax for revenue represents an exercise of the general taxing power. Thus, one is differentiated from the other, although the license fee for regulation alone also has the connotation of a tax as a charge on the business or pursuit for the cost of supervision in the public interest. The powers are essentially different: one is to

> license and regulate under the police power; the other, to raise revenue under the general power to tax. But the two may be 'unitedly exercised.' And the assessment may still constitute a license fee proper rather than a tax for revenue even though the fee charged be in excess of the regulatory expenses and burdens. Where the primary object is police regulation, it does not necessarily matter that the incidental result is revenue above the actual cost of supervision and control of the business; that is not enough to render the return a tax for revenue rather than a license tax; *e contra*, where revenue is the principal objective of the tax, it is not sustainable under the police power alone.
>
> [Citations omitted.]

■ Another fundamental principle that guides our disposition is that a regulatory "fee schedule has a presumption of reasonableness and will ordinarily be upheld unless competent proof is offered to overcome the presumption." *Automatic Merchandising Council v. Township of Edison*, 102 *N.J.* 125, 130, 506 *A.2d* 352 (1986). *Accord, Gilbert v. Town of Irvington*, 20 *N.J.* 432, 435, 120 *A.2d* 114 (1956); *Bellington, supra*, 17 *N.J.* at 568–69, 112 *A.2d* 268.

■ Several cases illustrate clearly the requirement that the litigant asserting that a charge imposed ostensibly for regulatory purposes is in reality a tax must bear the burden of proving that allegation. For example, in *Weiner v. Borough of Stratford*, 15 *N.J.* 295, 104 *A.2d* 659 (1954), plaintiff challenged a municipal ordinance imposing an annual license fee of from five to one hundred dollars on all persons engaging in any business within the Borough, the grant of the license to be determined by the Borough Council on recommendation of the Planning Board. Although the ordinance was invalidated because it contained no standards governing the issuance of licenses, plaintiff also contended that the fee constituted an invalid tax rather than a regulatory enactment. In an opinion by the late Justice Brennan, this Court rejected that contention because no proof had been offered to demonstrate a disparity between the fees imposed and the cost of regulation. The Court observed:

> Plaintiff's contention is not without merit. Certainly the ordinance is singularly wanting in regulatory features. Apart from the provision applicable specifically to new businesses, the only provisions suggestive of regulation are those which condition the issuance of licenses upon compliance by the licensee with safety laws

and ordinances, and, in the case of theatres and other places of amusement, require the written certification of such compliance from the building inspector and the chief of the fire department. The annual license fees range from $5 to $100 (all but eight businesses pay a $5 fee; an auction store pays the $100 fee), and the paucity of regulatory provisions is strongly suggestive that these fees are unreasonably in excess of the regulatory costs and are in actuality imposed solely to raise revenue.

*However, the disparity is not so obvious that we can reach a conclusion without evidence of the relation of the fees to regulatory costs, and there is no evidence bearing upon that question in the record.* In the circumstances we are unable to determine the question. Moreover, plaintiff does not complain of the $100 licensee fee chargeable for an auction store and is willing to pay it.

[*Id.* at 298, 104 A.2d 659 (emphasis added).]

In contrast, *Daniels v. Borough of Point Pleasant,* 23 *N.J.* 357, 129 *A.*2d 265 (1957), illustrates that the presumption of validity of a fee enactment can be overcome by proof that its primary purpose was to raise revenue. At issue in *Daniels* was the validity of a 1956 amendment to the Borough's building code that significantly increased the fees for building permits. Under the prior ordinance, permit fees were four dollars for structures valued up to $1000, and an additional two dollars for each additional $1000 in valuation or fraction thereof. The plaintiff adduced evidence proving that in the year prior to enactment of the amended ordinance, aggregate fees collected amounted to $8875, of which one half was paid to the building inspector as compensation and the balance retained by the Borough. No other persons were employed to directly assist the building inspector, although he did receive routine but minimal assistance from other Borough employees.

The amended ordinance increased permit fees substantially. Plaintiff, a residential home contractor, testified that he primarily constructed small homes for military veterans financed by federal loan programs, and that his average permit fee had increased from $18 per home under the prior ordinance to $262 per home under the revised ordinance. Evidence also was adduced that the Mayor and two councilmen had stated that the purpose of the amendment was to raise revenue to offset municipal expenses caused by an expanded school population. Based on the evidence

adduced, the trial court invalidated the amendment. In affirming, this Court observed:

> Inherent in the power to regulate and control is the power to charge license fees primarily designed to defray the costs of such control. They must not, of course, exceed the bounds of reason considered in connection with the service and the cost of the service granted[.]
>
> . . .
>
> What the Borough of Point Pleasant is attempting to do here is to defray the general cost of government under the guise of reimbursement for the special services required by the regulation and control of new buildings.
>
> Here, the difference between the cost to the borough of regulating and control-ling new construction bears no reasonable relation to the amount of revenue raised by the new amendatory ordinance. The record indicates that approximately the same services will now be rendered as were rendered in the prior years by the building inspector, *and that the fees raised by the new ordinance exceed by more than 700% the cost of inspecting the buildings and regulating the construction.* Admittedly, the purpose of the ordinance was to raise revenue to defray the increased cost of school and other government services. The philosophy of this ordinance is that the tax rate of the borough should remain the same and the new people coming into the municipality should bear the burden of the increased costs of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down.
>
> [*Id.* at 361–62, 129 *A.*2d 265 (emphasis added).]

More recent decisions have reaffirmed the principle that regulatory ordinances are presumptively valid and will be sustained absent proof that the fees imposed unreasonably exceed the cost of regulation. In *Automatic Merchandising Council, supra,* 102 *N.J.* 125, 506 *A.*2d 352, the issue concerned the validity of an Edison Township ordinance that imposed a forty-dollar annual licensing fee for food-service vending machines. The trial court found the fee unreasonable based on its determination that direct and indirect costs, plus a permissible revenue allowance, did not exceed fifteen dollars per machine, and ordered a partial refund of the excess over that amount. The Appellate Division ordered a refund of the entire fee. *Automatic Merchandising Council v. Township of Edison,* 204 *N.J.Super.* 395, 405, 499 *A.*2d 224 (1985). We reinstated the trial court's determination. In passing, we noted that although we were not bound by the Township's election not to contest before us the trial court's finding that the forty-

dollar fee was excessive, we were disinclined to address the issue because the record was inadequate:

> In its petition for certification, Edison Township did not directly challenge the trial court's determination that the licensing fee unreasonably exceeded the costs of regulation, but rather limited its petition to the decision of the Appellate Division in ordering a total refund. Although we are not confined to arguments presented in the petition for certification, we decline to address the merits of the fee because of the procedural posture of the case. *This case is a poor vehicle to test whether the revenue collected falls within the reasonable limits of excess over regulatory costs. Because of various discovery rulings made in the course of pretrial, defendant-municipality was unable to present all the proofs that it contends would sustain the forty-dollar fee.* Food-handling machines obviously pose a genuine concern for human health. Unless temperatures are correctly maintained, food may spoil and various bacteria may become present in the food; unless the vending machines are properly sealed, external contaminants may enter the machine and the product. It is difficult to quantify the nature or number of inspections warranted to assure continued public health. A good measure of discretion will have to be accorded a regulatory agency to develop a suitable program. *Because of its discovery problem, this case seemed to proceed on the theory that the municipality had to prove the cost-basis of its fee schedule. Such is not the law. A municipal fee schedule has a presumption of reasonableness and will ordinarily be upheld unless competent proof is offered to overcome the presumption.* Such proof should ordinarily encompass the variety of factors covered in our earlier decisions.
> [*Automatic Merchandising Council, supra,* 102 *N.J.* at 129–30, 506 *A.*2d 352 (emphasis added).]

To the same effect is our holding in *Public Service Electric and Gas Co. v. New Jersey Department of Environmental Protection,* 101 *N.J.* 95, 501 *A.*2d 125 (1985), in which a group of electric utility companies challenged the reasonableness of the permit fees for the 1982–83 fiscal year imposed by the Department of Environmental Protection (DEP) on discharges of heated effluent into the State's waterways. The fees were imposed pursuant to New Jersey's Water Pollution Control Act, *N.J.S.A.* 58:10A–1 to–20, which directed the DEP Commissioner to "establish and charge reasonable annual administrative fees, which fees shall be based upon, and shall not exceed, the estimated cost of processing, monitoring and administering the [New Jersey Pollutant Discharge Elimination System] NJDES permits." *N.J.S.A.* 58:10A–9. Pursuant to the statute, the DEP annually estimated its overall regulatory costs for the NJDES program and allocated those costs among the three surface-water discharge categories: industrial,

municipal, and thermal. For the year at issue, the DEP allocated $652,728 to the thermal dischargers out of its annual regulatory cost of approximately $2.5 million primarily on the basis that thirty percent of the total number of permits issued were for thermal dischargers. DEP asserted that its allocation of approximately 25 percent of its regulatory costs to thermal dischargers was rationally related to the regulatory burden imposed by those discharges. The electric utility companies, in a submission outside the record but put before the court as an exhibit to their appellate brief, attempted to demonstrate that the aggregate fees imposed on thermal dischargers was vastly disproportionate to DEP's actual work effort in regulating that category of discharges.

This Court rejected the utilities' challenge to the reasonableness of DEP's allocation of its NJPDES regulatory costs to the thermal dischargers, noting that the utilities' challenge "comes outside the record and does not permit the agency to respond on the record," *id.* at 107, 501 A.2d 125, and concluding that the utilities had failed to sustain their burden of demonstrating the unreasonableness of DEP's fee allocation. The Court observed:

> Thus, we believe the Legislature desired only to reaffirm its long-standing practice under which regulatory licensing programs of agencies are not taxing mechanisms but a means of generating enough revenue to be self-sustaining. In light of this statutory policy, we cannot say that there is an insufficient factual basis for the agency to act, or that in applying the policies of its enabling legislation to the record facts before it the Department made a clear error in judgment with respect to the allocation of costs between the categories.

> Hence, although we are left with a sense of some unease about the basis for the allocation among the categories, we cannot say that an allocation that is roughly related to the number of permits in each category and does not generate disproportionately-excessive costs against the category members is invalid as a matter of law.

> [*Id.* at 109, 501 A.2d 125.]

## C

As did the Chancery Division, the Appellate Division based its determination that the Sheriff's fee at issue was a tax rather than a regulatory fee, 333 *N.J. Super.* at 480–82, 755 A.2d 1236, on this Court's decision in *Resolution Trust Corp. v. Lanzaro,* 140 *N.J.*

244, 658 A.2d 282 (1995). That reliance, although understandable, was misplaced. Two aspects of *Resolution Trust* distinguish the issue there from the one presented on this appeal: first, the disparity between the Sheriff's costs of $369.58 (in addition to services engaging approximately ten hours of staff time), and the statutory fee of $275,075, was enormous; second, and of even greater significance, the fee in *Resolution Trust* was to be exacted from Resolution Trust Corporation (RTC), a federal governmental instrumentality established by Congress to act as conservator or receiver of failed thrift institutions and, expressly to enhance its ability to perform its statutory mission, exempted by Congress from all "state, municipal, and local taxation except taxes on real estate held by the Corporation. . . ." 12 *U.S.C.A.* § 1441a(g). *Id.* at 251, 658 A.2d 282. Implementing its statutory authority, RTC had adopted a policy concerning payment of state and local taxes that provides in part:

> The Corporation is immune from taxes other than *ad valorem* real property taxes. Taxes on sales, transfers, or other dispositions of Corporation property are generally in the nature of excise taxes which are levied on the transaction and not on the property (although the calculation of the amount of tax may be based on the property's sale price); the Corporation is immune from such taxes.
>
> [Statement of Policy Regarding the Payment of State and Local Property Taxes, 56 Fed.Reg. 23426, 23427 (1991).]

Concededly, in concluding that the fee sought to be imposed on RTC by the Monmouth County Sheriff was "essentially equivalent to a tax measured by the sale price of the foreclosed property," *id.* at 260, 658 A.2d 282, we did not require the RTC to sustain the ordinarily applicable burden of proving the unreasonableness of the regulatory exaction, *Automatic Merchandising Council, supra,* 102 *N.J.* at 130, 506 A.2d 352. We emphasized, however, the primacy of federal law in determining whether the charge to RTC as the successful bidder at a foreclosure sale of property on which it held mortgages as successor to a failed Savings and loan was in the nature of a tax rather than a regulatory fee. *Resolution Trust, 140 N.J.* at 252–53, 658 A.2d 282. Critical to our conclusion was the recognition that Congress apparently intended that RTC, similarly to the Federal Deposit Insurance Corporation, was not to

be burdened by state and local taxation when it acquired, as it did in the case then before us, assets previously encumbered by mortgages to failed thrift institutions. *Id.* at 260, 658 *A.*2d 282. Accordingly, our conclusion in *Resolution Trust, supra,* that the exaction in question was essentially equivalent to a tax did not purport to evaluate the overall application of the Sheriff's fee statute, *N.J.S.A.* 22A:4-8, on a statewide basis in the context of a full record, but rather reflected our judgment that, in the context of the extreme disproportionality between the fee and the value of the sheriff's services, the charge at issue there was facially inconsistent with Congress' determination that RTC's conservationist efforts as receiver of failed thrift institutions should not be burdened by such exactions.

### III

On this record, we clearly are unable to sustain the Appellate Division's affirmance of the Chancery Division's conclusion that the charge authorized by *N.J.S.A.* 22A:4-8 "is intended primarily to raise revenue, and not to compensate the governmental entity for the cost of providing the service." As noted, no proofs were offered by either party concerning the statewide operation of the Sheriffs' fee statute, or of the direct and indirect costs borne by Sheriffs in discharging their statutory responsibilities. BTD relied only on the allegation that the Sheriff's direct costs of $971.14 were disproportionate to the fee imposed. That proffer clearly is inadequate to invalidate a fee statute of statewide application that, in principle, has functioned with legislative authorization for in excess of two hundred years.

We need not and do not address here the complex factual issues that would be implicated by a challenge to the statute supported by an adequate and comprehensive record. We take note, however, of the Hudson County Sheriff's assertion that its fees from all sources, including those realized from foreclosure sales pursuant to *N.J.S.A.* 2A:4-8, constitute approximately only forty percent of its total budget. We infer, but cannot be certain, that the budget

reflects both the direct and indirect costs of operating the Sheriff's department. On that point, the Appellate Division observed that "[w]e do not suggest that indirect costs and expenses of running the Sheriff's office should not have been included in evaluating proportionality." *BTD, supra,* 333 *N.J.Super.* at 479 n. 1, 755 *A.*2d 1236.

We acknowledge the concern expressed by the Sheriffs' Association of New Jersey as *amicus curiae* that invalidation of the Sheriff's fee statute would have significant fiscal implications in all twenty-one counties. We also acknowledge the assertion by the Hudson County Sheriff that the issue of disproportionality cannot be assessed on the basis of isolated transactions, and that in their experience fee revenues generated from foreclosure sales in which the sale price is nominal or modest often are insufficient to compensate the Sheriffs' Office for its costs. Those concerns and contentions illustrate the soundness and significance of this Court's admonition almost fifty years ago in *Weiner, supra,* 15 *N.J.* at 298, 104 *A.*2d 659, that *"the disparity is not so obvious that we can reach a conclusion without evidence of the relation of the fees to regulatory costs, and there is no evidence bearing on that question in the record."* (Emphasis added). Accordingly, because BTD has not offered "competent proof . . . to overcome the presumption [of reasonableness]," *Automatic Merchandising Council, supra,* 102 *N.J.* at 130, 506 *A.*2d 352, we are compelled to reverse the Appellate Division's judgment invalidating the fee imposed by the Hudson County Sheriff.

We add only these observations. We do not agree with the Appellate Division's assertion that, assuming *N.J.S.A.* 22A:4–8 imposed a tax rather than a regulatory fee, it would be invalid in the absence of a clear legislative intent to impose a tax on those who benefit from the services of Sheriffs in implementing foreclosure sales. *BTD, supra,* 333 *N.J.Super.* at 484–85, 755 *A.*2d 1236. The law is well settled in this State that "[t]he power of taxation is a vital attribute of government and is vested in the State Legislature. . . ." *Solomon v. Jersey City,* 12 *N.J.* 379, 383, 97 *A.*2d 405

(1953). The longstanding history of the Sheriffs' authorization to collect fees for services in connection with foreclosure sales persuasively suggests that the Legislature would intend that the fees continue to be collected, whether it was denominated a fee or a tax. Whatever its legal classification may be, the charge is one that the Legislature is authorized to impose. No procedural challenge to the enactment of *N.J.S.A.* 22A:4–8 having been asserted, see *N.J. Const.* art. IV, § 6, ¶ 1 (requiring that revenue bills originate in the General Assembly), we discern no basis on which the statute's invalidation should be sustained, even assuming that an adequate record established that the charge imposed was essentially equivalent to a tax.

We reverse the judgment of the Appellate Division and remand the matter to the Chancery Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.