908 A.2d 854

REGENCY SAVINGS BANK, F.S.B., PLAINTIFF–RESPONDENT/
CROSS–APPELLANT, v. SOUTHGATE CORPORATE OFFICE
CENTER, SOUTHGATE CORPORATE OFFICE CENTER CON-
DOMINIUM ASSOCIATION, INC., ANDERS S. BILLING AND
OFFICE CAMPUS, INC., DEFENDANTS.

MORRIS COUNTY SHERIFF, APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 4, 2006—Decided October 25, 2006.

Before Judges COBURN, R.B. COLEMAN, and GILROY.

*Ronald Kevitz,* Morris County Counsel, argued the cause for appellant/cross-respondent.

*Walter J. Fleischer, Jr.,* argued the cause for respondent/cross-appellant (*Drinker Biddle & Reath,* attorneys; *Mr. Fleischer* and *John P. Mitchell,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

This dispute between the Morris County Sheriff and plaintiff, Regency Savings Bank, F.S.B., as mortgagee, arose after Regency obtained a judgment in foreclosure, issued a writ of execution to the sheriff, and then settled with defendants before the sheriff's sale. The primary question to be resolved is the amount of the fee due to the sheriff under *N.J.S.A.* 22A:4-8.

The sheriff based his fee claim on the amount of the foreclosure judgment, almost $36 million. He asserted that sum was the settlement received by Regency from defendants in consideration of the cancellation of the sheriff's sale and that the applicable statutory percentages would result in a fee of over $730,000.

Regency contended that *N.J.S.A.* 22A:4–8 is unconstitutional and that the sheriff's claim was untimely. Alternatively, Regency argued that the sheriff was only entitled to the $50 minimum statutory fee or, at most, application of the statutory percentages to the $250,000 in cash it received from defendants to cancel the sale, which sum, it asserted, was the settlement. Under that theory, the fee would be $5,050.

The Chancery Division rejected plaintiff's constitutional and procedural arguments, agreed that the fee had to be based on the settlement, but ruled that the settlement was $250,000 and awarded the sheriff a fee of $5,050.[1] The sheriff appealed, and Regency cross-appealed. At argument, Regency agreed that we need not resolve its constitutional claim if we were satisfied that that the sheriff's fee was no more than the $5,050 awarded by the Chancery Division. Since we are so satisfied, we will limit our discussion to the alleged procedural bar and to the meaning of the statute in this context.[2]

The material facts are undisputed. In August 2004, Regency, the mortgagee of property owned by defendant Southgate Corporate Office Center ("Southgate"), obtained a final foreclosure judgment of $35,825.162.20, and sent a writ of execution to the Morris County Sheriff, who scheduled a sale for March 14, 2005.

In late February, Regency entered into a written contract with Southgate. Although the contract is complex, in essence, Regency agreed that in return for a nonrefundable payment of $250,000, it would cancel the sheriff's sale and give Southgate ninety days to obtain refinancing. If successful, Southgate would pay Regency about $32 million, and if it failed, it would convey its interest in the

---

[1] The record indicates that the sheriff's actual costs were $619.59 and since the briefs are silent on this issue, we assume that they have been paid.

[2] The constitutional argument, which was based on the claim that the statute created a tax and was unconstitutional because it originated in the Senate instead of the Assembly, appears to be unsound. *BTD–1996 NPC 1 L.L.C. v. 350 Warren L.P.*, 170 *N.J.* 90, 104–106, 784 *A.*2d 1214 (2001).

property to Regency's designee. The money and deed were to be held in escrow by Regency's attorneys.

On March 8, Regency's attorneys wrote to the sheriff by fax and mail asking for cancellation of the sale and "return of the Writ of Execution marked 'Not Satisfied.' " On March 9, the sheriff replied, asking what funds, if any, had been received from defendants in consideration of the cancellation so that fees and commissions could be calculated. Later that day, Regency's attorneys responded, writing that

Regency has not received any funds in satisfaction of the debt at this time, and has only received $250,000 which is being held by this firm in escrow and which will be applied at a future date toward the payment of outstanding real estate taxes on the property at issue.

On May 2, the sheriff again wrote to Regency's attorneys, refusing to return the writ of execution until he was advised about the reason for the cancellation and whether any funds were received. Regency's attorneys responded by fax and mail on May 16, 2005, reiterating the position taken in their letter of March 9. Later the same day, the Morris County Counsel, on behalf of the sheriff, sent a fax and letter to Regency's attorneys demanding a fee of $731,773.62, which was based on the assertion that the settlement was for the amount of the foreclosure judgment of over $35 million dollars including interest. On May 26, the sheriff filed a notice of motion in aid of litigant's rights asking the Chancery Division for an order requiring Regency to submit the money previously demanded. At the end of May, the option expired unexercised and the deed and $250,000 were released from escrow. The sheriff never offered proof respecting the actual value of the property subjected to the writ of execution.

The sheriff's right to compensation in connection with execution sales is governed by *N.J.S.A.* 22A:4–8, which contains these pertinent provisions:

When a sale is made by virtue of an execution the sheriff shall be entitled to charge the following fees: On all sums not exceeding $5,000.00, 6%; on all sums exceeding $5,000.00 on such excess, 4%; the minimum fee to be charged for a sale by virtue of an execution, $50.00.

. . . .

When the execution is settled without actual sale and such settlement is made manifest to the officer, the officer shall receive ½ of the amount of percentage allowed herein in case of sale.

When the words in a statute are clear, and their literal application is compatible with the overall legislative design, the interpretive process is satisfied by enforcement of the plain meaning of the words. *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002); *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.,* 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957). But when "conflicting interpretations of a statute are plausible," we may resort to "extrinsic aids such as legislative intent and prior precedent. . . ." *In re Passaic County Utilities Auth.,* 164 *N.J.* 270, 299–300, 753 *A.*2d 661 (2000).

The statute at issue is decidedly unclear. For example, the first paragraph quoted above does not indicate who shall pay the fee. Also a property might be sold for more or less than the judgment. Is the sum to which the percentage is to be applied the price for which the property was sold, or the amount collected on behalf of the judgment holder, or the value of the property? And although the second paragraph clearly states that in case of settlement the percentage allowed shall be half the percentage allowed in case of sale, it does not state whether the percentage should be applied to the value of the property or to the amount of the settlement. Nor does it define what settlement means in this setting. Thus, we must go beyond plain meaning to discover the legislative intent and to achieve common sense in context. Fortunately, the history of this legislation and judicial precedent provide adequate guidance.

*Sinnickson v. Gale,* 16 *N.J.L.* 21 (Sup.Ct.1837), is instructive. The issue was whether the sheriff is entitled to application of the percentage commission to the "whole amount of sales made by him on execution, where the property sells for more than enough to satisfy the execution; or whether he is entitled to [the percentage] only on the sum actually raised for the party, in whose favor the execution is?" *Id.* at 21. The court noted that the 1799 version of

this law provided that the fee was " '*to be computed* on the amount of the debt, or damages, paid, or secured to the plaintiff.' " *Ibid.* It also noted that in 1823, the statute was amended to provide that the fee would be allowed " '*on the amount of sales*,' " and to provide that if the execution was settled between the parties without sale, half the usual percentage would be "allowed *on the debt.*" *Ibid.* The court concluded "that the legislature never intended to give the sheriff ... a commission for sales over and above the amount required to satisfy the execution." *Id.* at 21–22. And when, as in that case, the property sold for more than the debt, and the sheriff was obligated to turn the balance over to the defendant, he was not entitled to any fee from either party on the balance. *Id.* at 22.

In *Sturges v. Lackawanna and Western Railroad Co.,* 27 *N.J.L.* 424 (Sup.Ct.1859), which was not a foreclosure action, the plaintiff issued writs of execution to the sheriffs in three counties on a judgment of almost $400,000. *Id.* at 425. Before the sale, plaintiff decided "to let his debt stand upon the original obligations," and "withdrew" the executions. *Id.* at 425. Each sheriff demanded a fee based on "the whole amount due on the executions," and plaintiff contended that no fee was due because this "was not the kind of settlement contemplated by the statute." *Ibid.*

The court rejected plaintiff's claim that what occurred was not a settlement under the statute:

> It is of no consequence to the sheriff how the matter is arranged between the plaintiff and the defendant. If anything is done between them, by which a sale is rendered unnecessary, that must be considered a settlement within the meaning of the act. The execution is then settled without a sale; its operation is suspended by the act of the parties; the sheriff ... becomes entitled to the allowance provided by the statute.
>
> [*Id.* at 426.]

The court said that the reduced fee in the case of settlement was to reimburse the sheriff "for the trouble, care, and risk of the officer in discovering and levying upon the property of the defendant, and its safe keeping for the purpose of a sale and the securing the payment of the amount due." *Id.* at 425–26. It

concluded that since the sheriff had secured the property, "it would be unjust to deprive him of all compensation." *Id.* at 426. Although it rejected the sheriffs' claims, each to a fee on the entire judgment, it allowed the settlement percentage to be applied to "the value of the goods by them respectively levied on," with the proviso that "[i]f the value of the goods exceed the amount due on the execution, then they may each [claim a fee] in proportion to the value of the property levied on." *Id.* at 427. The court concluded by saying that if any questions arose about the value of the property levied on in each county, presumably on remand, the matter could be decided on affidavits.

In *Jacoby v. Eseo,* 329 *N.J.Super.* 119, 746 *A.*2d 1069 (App.Div. 2000), which was a mortgage foreclosure action, the sheriff's sale achieved a bid of $186,000, but the bidders defaulted after having deposited $20,000 with the sheriff. *Id.* at 121, 746 *A.*2d 1069. The sheriff scheduled a second sale, and this time plaintiffs bought the property, subject to their judgment, for $100. *Id.* at 121–22, 746 *A.*2d 1069. The sheriff demanded a commission on the original bid price of $186,000, and we held that commission only applied to the $20,000 deposit. *Id.* at 122, 746 *A.*2d 1069. Based on *Sinnickson* and *Sturges,* as well as the "[a]nalogous provisions of the earlier versions of the statute," we concluded that the "[s]heriff's commission must be related to the amount recovered on behalf of the creditor." *Id.* at 123, 746 *A.*2d 1069. Implicitly, *Jacoby* recognized that the fee on the $100 sale to the plaintiff would be the minimum allowed by the statute, and not be measured by the amount of the judgment or the value of the property.

In *BTD–1996 NPC 1 L.L.C. v. 350 Warren L.P.,* 170 *N.J.* 90, 784 *A.*2d 1214 (2001), plaintiff obtained a judgment in foreclosure in the approximate amount of $3,830,913.23, and issued a writ of execution to the sheriff. *Id.* at 93–94, 784 *A.*2d 1214. Before the sale, BTD asked the sheriff to cancel the sale and advised "that the underlying dispute had been resolved by 350 Warren's payment of $2,400,000." *Id.* at 94, 784 *A.*2d 1214. The Court held

that the commission had to be based on the settlement, explaining that

[i]n the context of the issue before us, *Sinnickson* and *Sturges* demonstrate the longstanding legislative authorization and judicial recognition of the practice of compensating sheriffs for their services in execution sales on the basis of the amount of the underlying obligation or settlement.

[*Id.* at 97, 784 *A.*2d 1214.]

Although the Court cites *Sturges* with approval, it certainly did not accept as applicable in the context of a mortgage foreclosure sale settlement, the statement in *Sturges,* quoted above, to the effect that it "is of no consequence to the sheriff how the matter is arranged between the plaintiff and the defendant." *Sturges, supra,* 27 *N.J.L.* at 426. In fact, it based the commission on the amount of the settlement. In the above quote from *BTD,* we take the reference to "the underlying obligation" as a description of what occurred in *Sinnickson,* namely limiting the sheriff to the amount turned over to plaintiff when the property is sold for more than the obligation.

We need not decide if we agree with so much of the *Sturges* decision as, in the event of a settlement, allowed each sheriff a fee in relation to the value of the property seized. Perhaps that is appropriate when, as there, the foreclosure of a mortgage is not involved.

■ But we are dealing with mortgage foreclosure, which presents a unique circumstance. The Supreme Court has noted that "foreclosure sales rarely, if ever, bring the fair market value of the foreclosed property." *Carteret Sav. and Loan Ass'n, F.A. v. Davis,* 105 *N.J.* 344, 351, 521 *A.*2d 831 (1987). And, indeed, we may reasonably infer from the statistics noted in that case that almost all sheriff's sales are made for the nominal bid offered by the mortgagee, most often no more than $300. *Ibid.*; 21 New Jersey Practice, Skills and Methods § 33:47, at 677 (rev.3d ed. 2005) ("At the sale, the plaintiff-mortgagee will usually bid $100 ["or the minimum bid as established in the county"], and then allow competitive bidding."). As noted above, when a nominal bid results in the sheriff giving a deed for the property to the

mortgagee, the statute allows only the minimum fee. Common sense dictates that we consider that fact in relation to the firm policy of encouraging settlements. Indeed, as the Court observed in *Judson v. Peoples Bank & Trust Co.*, 25 *N.J.* 17, 35, 134 *A.*2d 761 (1957), "It is the policy of the law to encourage settlements and any statutory scheme ... ought not to be so fettering as to deter them."

If we read the statute to mean that on settlement in this context, a mortgagee had to pay the sheriff a commission based on either the judgment or the value of the property, without regard to the settlement amount, then there would be no incentive to settle. Instead, the mortgagee would most likely buy the property for the nominal amount, thereby incurring the minimum fee. Surely that would have been the case here, where under the sheriff's theory, Regency otherwise would have become obligated to pay almost three-quarters of a million dollars. Although Regency obtained certain advantages from entering into the settlement in this case, including a deed to the property, the value of those advantages is best measured by the cash settlement received, namely the $250,000, which Regency concedes resulted, in part, from the sheriff's exercise of his duty, and which results in the $5,050 fee awarded by the Chancery Division. We so conclude because the deed could have been obtained by Regency for a nominal bid and for a minimum fee.

Therefore, we hold that when a sheriff's sale pursuant to a mortgage foreclosure judgment is cancelled by plaintiff because of a settlement with defendant, the sheriff's percentage fee under *N.J.S.A.* 22A:4–8 must be based, not on the amount of the judgment or the value of the property, but on the amount of the settlement. When the settlement calls for a cash payment for cancellation of the sale, for which defendant receives additional time to obtain refinancing, with the understanding that on a failure to meet the deadline for refinancing, plaintiff will receive a deed to the property from defendant, the amount of the settlement is the cash payment.

■ Finally, we turn to Regency's procedural argument, which begins with the statute's provision that a sheriff is not entitled to any fees unless he files his request with the clerk "as the court shall direct by general rule or special order. . . ." *N.J.S.A.* 22A:4-8. Next, Regency notes that the applicable court rule requires filing "within 20 days after the date of the sale." *R.* 4:59–1(f). Although the rule says nothing about settlement, Regency argues that the twenty days begins to run from the time the settlement "is made manifest" to the sheriff. *N.J.S.A.* 22A:4–8. Finally, Regency says that it made the settlement manifest to the sheriff in its letter of March 9, 2005, and since the sheriff waited nearly three months before applying to the court for his fee, he is out of time.

■ Although we agree that a sheriff must act within twenty days of learning of the settlement, we disagree with Regency's characterization of the March 9 letter as a clear notification to the sheriff of a settlement. The letter never uses the word settlement, and it's first pertinent statement seems to be to the contrary insofar as it says that "Regency has not received any funds in satisfaction of the debt at this time. . . ." Although it concedes that Regency has "received $250,000," it then asserts that sum is being held in escrow. Obviously, something being held in escrow may or may not be turned over, depending on the agreement. Thus, the letter did not advise the sheriff of a final settlement between the parties, and no other notice having been given, the sheriff's application was timely.

Affirmed.